666 So.2d 213 (1995)
James REVELS, Appellant,
v.
STATE of Florida, Appellee.
No. 94-02845.
District Court of Appeal of Florida, Second District.
December 27, 1995.
*214 James Marion Moorman, Public Defender, Bartow, and Allyn Giambalvo, Assistant Public Defender, Clearwater, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Brenda S. Taylor, Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Judge.
James Revels appeals his conviction for possession of crack cocaine, arguing that the trial court should have suppressed the cocaine as the fruit of an illegal arrest. Although this case is similar to Burnette v. State, 658 So.2d 1170 (Fla. 2d DCA 1995), in which the police lacked probable cause to arrest the defendant, we conclude that probable cause existed to arrest Mr. Revels in this case.
On the evening of January 3, 1994, the St. Petersburg Police Department assigned two experienced narcotics officers to observe a house at 1001 15th Street South. This specific house was known to be in a location where crack cocaine was sold. This knowledge was not based on rumor or hearsay, but on the fact that the police had made numerous narcotics arrests for transactions occurring at the house.
The officers concealed themselves in an adjacent vacant house approximately fifty feet away. A street light on the corner provided good visibility. Before arresting Mr. Revels, the officers monitored the house for at least a few minutes. They observed two separate events in which cars pulled up to the curb in front of the house. A man who was sitting outside the house walked up to each car. On both occasions, the officers observed hand-to-hand transactions in which currency was exchanged for an unidentified object.
Within ten minutes of these events, at approximately 9:45 p.m., Mr. Revels arrived at the same location on his bicycle. The man from the house walked over to Mr. Revels, who had currency visible in his right hand. He gave the money to the man, and the man placed a small object in Mr. Revels' left hand. Mr. Revels then placed his left hand in his left jacket pocket. The police officer who made these observations testified that he could not identify the small object as crack cocaine, but the overall transaction was very similar to numerous other cocaine transactions that he had witnessed prior to this arrest.
The officers conducting the observation communicated by radio with a another officer in a police car. They advised the patrol officer to stop Mr. Revels and search his left front pocket. Mr. Revels was stopped within three blocks of the house, and a nonconsensual search of Mr. Revels' pocket revealed crack cocaine.
In Burnette, this court considered a similar case involving a house under observation in the same neighborhood as the house *215 in this case. 658 So.2d 1170. The police methods and the time of day are comparable. Two critical factors distinguish this case from Burnette. First, the officers in Burnette did not observe an exchange of either money or drugs in the hand-to-hand transaction. Second, they did not observe two prior currency transactions on the same evening. In Burnette, this court held that the officers' narcotics experience, the reputation of the location, and the evidence of prior surveillance resulting in arrests was sufficient to warrant a Terry stop, but was not sufficient to establish probable cause for arrest. 658 So.2d at 1171. In both Burnette and this case, the search exceeded the pat-down permitted incident to a Terry stop. Accordingly, unless the police had probable cause to arrest Mr. Revels, this cocaine must be suppressed as the fruit of an illegal arrest.
Probable cause to arrest exists when the totality of the facts and circumstances within the officer's knowledge would cause a reasonable person to believe that an offense has been committed and that the defendant is the one who committed it. See Shriner v. State, 386 So.2d 525, 528 (Fla. 1980), cert. denied, 449 U.S. 1103, 101 S.Ct. 899, 66 L.Ed.2d 829 (1981); State v. McCormack, 517 So.2d 73, 74 (Fla. 3d DCA 1987); Cross v. State, 432 So.2d 780, 782 (Fla. 3d DCA 1983).
"The facts constituting probable cause need not meet the standard of conclusiveness and probability required of the circumstantial facts upon which a conviction must be based." Shriner v. State, 386 So.2d at 528. "`In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Illinois v. Gates, 462 U.S. 213, 231, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527, 544 (1983) (citation omitted). "The officer need not actually see the law being violated nor must he satisfy himself beyond any question that a felony has been committed." Russell v. State, 266 So.2d 92, 93 (Fla. 3d DCA), cert. denied, 271 So.2d 140 (Fla. 1972). An officer is permitted to take a realistic view of the facts in making a probable cause determination, see State v. Maya, 529 So.2d 1282, 1287 n. 7 (Fla. 3d DCA 1988), "for [p]robable cause is a matter of practicalities, not technicalities." McNeil v. State, 512 So.2d 1062, 1064 (Fla. 4th DCA 1987) (citation omitted), review denied, 519 So.2d 987 (Fla. 1988).
State v. Russell, 659 So.2d 465, 468 (Fla. 3d DCA 1995).
We conclude that the totality of the facts and circumstances in this case would cause a reasonable person to believe that a drug offense had been committed and that Mr. Revels had committed the offense. In addition to the facts in Burnette, the fact that the officers witnessed the exchange of money in this case is critical to our decision. In the overall context of this case, the exchange of money is unlikely to be an exchange for any small object other than crack cocaine. The fact that the officers witnessed two prior exchanges on this same evening adds to the circumstances supporting probable cause.
In another recent case, Howard v. State, 623 So.2d 1240 (Fla. 2d DCA 1993), this court implicitly ruled that a similar arrest following surveillance was not based on probable cause. In Howard, money was observed in the hand-to-hand transaction, but there is no indication in the opinion that a specific house had been targeted because of its prior history or that recent similar transactions had occurred at the house. Similarly, in Winters v. State, 578 So.2d 5 (Fla. 2d DCA), review denied, 589 So.2d 292 (Fla. 1991), we held that the officers there lacked probable cause after viewing an exchange of money in an alley. Although the alley was reportedly "known for drug activity," the opinion does not describe prior surveillance or arrests in the alley or the basis for its reputation. The surveillance appears to have been an isolated event by officers whose training and experience are not described in the opinion.
In Ramirez v. State, 654 So.2d 1222 (Fla. 2d DCA), review denied, No. 85,836, 662 So.2d 933 (Fla. Oct. 11, 1995), an officer observed a similar currency exchange that was not sufficient to create probable cause. In that case, however, the police had not *216 established a controlled surveillance of a known drug outlet. It is apparent from the facts contained in the opinion that the police observation was a random event. See also Doney v. State, 648 So.2d 799 (Fla. 4th DCA 1994), review denied, 659 So.2d 272 (Fla. 1995).
In Walker v. State, 636 So.2d 583 (Fla. 2d DCA 1994), the police stopped the defendant and searched his car after he had left the scene of alleged drug transactions. The circumstances of the surveillance are very similar to Mr. Revels' case. This court found a lack of probable cause, explaining that the search was not based on "fresh, direct, uncontradicted evidence." Id. at 584. It is significant, in analyzing Mr. Revels' case, that Mr. Walker had been the seller in the observed transactions. His act of leaving the scene of the sales suggests that he was no longer in possession of drugs. If the police had lawfully obtained cocaine from one of Mr. Walker's customers prior to his arrest, then the police presumably would have had probable cause to arrest him for sale of cocaine.
These cases demonstrate the great difficulty, if not impossibility, involved in delineating the minimum factual basis necessary to establish probable cause under all the circumstances of a drug surveillance operation. See State v. Caicedo, 622 So.2d 149 (Fla. 3d DCA 1993) (hesitation in removing small item from hand indicative of a drug selection process, as is placing item in one's mouth). These cases do disclose at least six factors that are commonly evaluated at suppression hearings to determine whether the evidence proves probable cause or merely reasonable suspicion in the context of such surveillance.
1. The Training and Experience of Law Enforcement. See Doctor v. State, 596 So.2d 442 (Fla. 1992). A well-trained officer with years of drug experience is not necessarily more credible than any other police officer. However, such an officer is more likely to know what to observe and to distinguish innocent behavior from incriminating behavior. See, e.g., P.L.R. v. State, 455 So.2d 363, 364 (Fla. 1984) (officer observed that manilla envelopes were used to store nickel bags of marijuana in over 100 occasions), cert. denied, 469 U.S. 1220, 105 S.Ct. 1206, 84 L.Ed.2d 349 (1985). The evidence of training and experience could have been better developed in Mr. Revels' case, but there is evidence that the officers who observed him were experienced.
2. The Quality of the Surveillance Procedures. A well-controlled surveillance operation with good visibility and with adequate methods to both obtain and preserve evidence allows the state to present detailed proof at the suppression hearing. In this case, the procedures to obtain the evidence were good, but no videotape or other documentary methods were used to preserve evidence independent of the officers' recollections.
3. The History of the Specific Location Under Surveillance. Rumor and reputation are no substitute for fact. Actual proof of ongoing or recent drug activity at a specific location is far more likely to assist in establishing probable cause than a general belief that an entire street or neighborhood is a "high drug area." This factor was adequately supported in Mr. Revels' case.
4. Recent Events at the Location. The fact that drugs were sold at a location last month may not necessarily indicate that drugs will be sold there tomorrow. As Walker demonstrates, evidence can become stale quite quickly in some factual circumstances. Detailed information proving prior sales to other persons immediately preceding the arrest may establish the difference between reasonable suspicion and probable cause. Obviously in this case, a controlled buy at the location on the evening in question would have dramatically simplified the analysis, but the events observed in the period immediately preceding Mr. Revels' arrest contributed to the officers' probable cause.
5. Prior Knowledge of the Parties Involved. If the police develop information prior to an arrest concerning the parties' involvement with drugs, that information may help transform reasonable suspicion into probable cause. In this case, although the police had been surveilling this location for a considerable time, there is no indication that *217 they knew the identity of the suspected drug dealer or Mr. Revels.
6. A Detailed Description of the Entire Event. The case law is replete with instances in which one or two factual details observed by an officer transforms reasonable suspicion into probable cause. Likewise, case law includes examples of premature arrests made before enough circumstances have occurred to establish probable cause. Whenever an officer recalls a detail on the witness stand that is not in his or her arrest report, the officer's credibility becomes a significant issue. Although an officer specializing in drug offenses may be more observant of critical evidence, the many transactions that he or she observes must make it difficult to recall each transaction with detail. Thus, detailed testimony of the event, buttressed by a timely written arrest report containing those details, is often critical at a suppression hearing. In this case, the testimony is detailed, but could have been better supported in the earlier reports.
There are some citizens who fear that the Fourth Amendment has become a victim in the war against drugs. Although we affirm the trial court's decision to admit the evidence of drugs in this close case, we emphasize that society's legitimate fear of crack cocaine and the ease with which small quantities of this drug can be concealed are not valid reasons to dilute the Fourth Amendment probable cause standard. The procedures in this case were not perfect, but they were sufficient to establish the probable cause necessary under the Fourth Amendment.
Affirmed.
PATTERSON, A.C.J., and FULMER, JJ., concur.