677 So.2d 903 (1996)
Dennis CLARK, a/k/a David Durden, Appellant,
v.
STATE of Florida, Appellee.
No. 95-01894.
District Court of Appeal of Florida, Second District.
June 28, 1996.
Rehearing Denied August 15, 1996.
J.L. "Ray" LeGrande of LeGrande & LeGrande, P.A., Fort Myers, for Appellant.
*904 Robert A. Butterworth, Attorney General, Tallahassee, and Susan D. Dunlevy, Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Judge.
Dennis Clark appeals his judgments and sentences following the denial of his dispositive motion to suppress. We reverse because the stolen vehicle profile used in this case to justify a Terry[1] stop did not establish reasonable suspicion that this car was stolen.
On Sunday, December 15, 1991, a Broward County deputy sheriff was on duty, observing traffic at the east toll booth of Alligator Alley. He was watching eastbound cars, looking for broken steering columns or other indications that a car was stolen. At approximately 11 p.m., he observed a champagne colored Cadillac Coup DeVille pass through the westbound toll booth. The car was occupied by two African-American men. The driver made momentary eye contact with the deputy. The deputy believed the driver seemed nervous. As the car pulled away from the toll booth, the deputy observed that it had a temporary tag, which was visible but hanging down on the left side. Based on these observations alone, the deputy concluded that the vehicle might be stolen and he stopped the car to investigate a possible theft.[2]
After stopping the vehicle, the deputy learned that the driver was wanted on two outstanding warrants. The driver told the deputy that the vehicle belonged to his sister and gave the deputy permission to search the trunk. In the trunk, the deputy found stolen office and computer equipment. Mr. Clark was a passenger in the car, and the state ultimately charged him with two counts of burglary and two counts of grand theft in Lee County, based on the items found in the trunk.[3] The car was not a stolen vehicle.
At the suppression hearing, the deputy explained that he was very skilled in locating stolen vehicles. He used various profiles in his work. The deputy testified that he relied upon several factors when he stopped the vehicle in this case. First, the vehicle was a General Motors automobile, which the deputy believed thieves prefer over other vehicles. Second, the car was a Cadillac, which has a high value in chop shops.[4] Third, the car had a temporary tag. Finally, the driver avoided eye contact and seemed nervous. Given that many drivers would choose not to engage in extended eye contact with a police officer while passing through a toll booth late at night, this "profile" would permit a police officer to stop virtually any newly purchased Cadillac passing through a toll booth on an interstate highway.
There is nothing inherently improper about a profile. For example, if the profile in this case had included the officer's observation of a broken steering column, our analysis would be substantially different. As the supreme court has succinctly explained:
A "profile" thus is permissible precisely to the degree that it reasonably describes behavior likely to indicate crime. That is, the officer, prior to the stop, must observe some activity that links a particular person to some specific, articulable evidence of criminal wrongdoing. However, Florida law does not permit a profile based on factors that are little more than mundane or unremarkable descriptions of everyday lawabiding activities.
State v. Johnson, 561 So.2d 1139, 1142 (Fla. 1990) (citation omitted). The factors upon which the deputy relied in this case fall within *905 the mundane and unremarkable. See, e.g., Department of Hwy. Safety & Motor Vehs. v. Coleman, 505 So.2d 668 (Fla. 5th DCA) (drug courier profile consisting of a late model vehicle with rental tags, middle-aged male driver avoiding eye contact, traveling north on an interstate highway, and driving cautiously was too general to support a Terry stop), review denied, 511 So.2d 998 (Fla.), cert. denied, 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987). Accordingly, the Terry stop was invalid, and the trial court erred in denying Mr. Clark's motion to suppress. Reversed and remanded.
FRANK, A.C.J., and QUINCE, J., concur.
NOTES
[1] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[2] The parties have extensively argued whether this was a pretextual traffic stop. Cf. Whren v. United States, ___ U.S. ___, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (holding that temporary detention of motorist is valid under Fourth Amendment where officer has probable cause to believe motorist has violated traffic law, even if a reasonable police officer would not have detained the motorist for such a violation). The trial court expressly found that this was not a traffic stop, but rather a criminal investigative stop. Accordingly, we do not reach this issue.
[3] Mr. Clark has standing to challenge the initial stop of the car. Wulff v. State, 533 So.2d 1191 (Fla. 2d DCA 1988), approved, Nelson v. State, 578 So.2d 694 (Fla.1991).
[4] The deputy's second factor is not totally distinct from the first factor because all Cadillacs are General Motors vehicles.