PER CURIAM.
Berard appeals the withheld adjudication and sentence of two years’ probation rendered pursuant to his plea of no contest to possession of cocaine and paraphernalia. Berard specifically challenges the denial of his properly preserved, dispositive motion to suppress. We reverse.
This case is another in a line of cases before this court involving a stop and ensuing drug arrest arising out of the surveillance of a suspected drug house. See Revels v. State, 666 So.2d 213 (Fla. 2d DCA 1995); Burnette v. State, 658 So.2d 1170 (Fla. 2d DCA 1995); Saadi v. State, 658 So.2d 112 (Fla. 2d DCA 1995); Tinson v. State, 650 So.2d 189 (Fla. 2d DCA 1995); Powell v. State, 649 So.2d 888 (Fla. 2d DCA 1995); Burnett v. State, 644 So.2d 152 (Fla. 2d DCA 1994). The incident giving rise to the charges against Berard occurred on November 29,1996, when Ber-ard’s vehicle was stopped, a search conducted, and cocaine and paraphernalia discovered as a result of the search. The stop was made pursuant to a surveillance operation of a suspected crack house being conducted by the patrol division of the St. Petersburg Police Department.
On the day of Berard’s arrest, Officer Michael Brown was staking out 650 Fourteenth Avenue South in St. Petersburg, Florida, as a result of information he had received that the house in question was a pretty active place for drug sales. The officer found a nearby location where he and his partner could park a block away, and then sneak up along the houses until they got to a spot seventy-five feet away which overlooked the backyard from across the street. Officer Brown and his *769 partner decided to wait until it got dark to get out of their patrol car and start observing the house. The street was lit and, the majority of the time, the back porch of the residence was also lit. At about 9:15 p.m., they observed a vehicle with several occupants drive up to the house. One of the vehicle’s occupants went inside for thirty or forty seconds, then came out and left. The officer radioed a dispatch to another unit which then stopped the automobile. That stop resulted in an arrest for possession of cocaine and marijuana.
Later, at about 10:00 p.m., Berard and another man arrived in a car, went inside for thirty or forty seconds, came out of the house, and left. Officer Brown again radioed to the second unit, which then stopped Berard. Apparently, after the stop was made, police asked to search Berard, he ultimately raised his hands above his head, and he advised the officers to go ahead and search. However, at the hearing on the motion to suppress the officer who had stopped Berard, ostensibly for making a right turn without signaling, was not present and did not testify.[1] Thus, the trial court heard only the testimony of Officer Brown during the suppression hearing.
Officer Brown described the location to be like a farm store type location where people would drive up to the residence, park on the east side, go into the back, and then come out shortly thereafter. According to the officer, this type of activity was going on throughout the duration of his observation. There had also been citizen complaints, concerning the activity at the residence.
Officer Brown testified that, on the night in question, nine traffic stops were made during the operation resulting in five arrests for possession. According to the officer, there was so much activity coming from the residence that there were not enough police in force to address it. The persons being arrested were white individuals in a nonwhite neighborhood. Officer Brown was certain, based on his personal observations and the reports from citizens and other police officers, that the location was a crack house.
Officer Brown conceded that he had no information before the stop that Berard was involved in any illegal activity and that he could not see what had happened inside the house. He conceded that he saw no money in Berard’s hands going in, and nothing on him coming out that could be construed to be illegal paraphernalia or drugs. He conceded that other than walking in and out of the house, he saw nothing to indicate that Berard had violated any law.
During the motion to suppress hearing, the .trial judge carefully analyzed the factors set forth in Revels. See Revels, 666 So.2d 213. Several of the factors set forth in Revels, particularly the experience of the law enforcement officers and the recent events transpiring at this crack house, weighed in favor of the trial court’s decision to deny the motion to suppress. Id. However, the inescapable fact was that no officer witnessed or heard anything to indicate that Berard was committing, had committed or was about to commit a crime. Thus, factually, the present case is essentially indistinguishable from Tinson, in which this court found the denial of a motion to suppress to be erroneous. See Tinson, 650 So.2d 189. Because the State failed to demonstrate that law enforcement had the founded suspicion to justify an investigatory stop, we reverse.
*770 Reversed and remanded for further proceedings.
GREEN and SALCINES, JJ., Concur.
ALTENBERND, A.C.J., Concurs specially.

. Although there was some suggestion that the stop of the subject vehicle was made due to an illegal turn, the officer who made the stop did not testify. In the record, the only support for this contention was Berard’s motion to suppress. However, at the hearing the State specifically came forward to argue that it was not going to present the testimony of the officer who had made the stop and effected the arrest, because the trial court could determine the validity of the ensuing stop based upon what the officer who had conducted the surveillance of the crack house had observed. The trial court apparently agreed and denied Berard’s motion.