ALTENBERND,
Acting Chief Judge, Concurring.
As the author of Revels v. State, 666 So.2d 213 (Fla. 2d DCA 1995), I feel compelled to make a few additional observations about this case. I am not inclined to believe that the police did a particularly good job of satisfying any of the six factors suggested in Revels. It is not inconceivable that stops of this sort could be justified without viewing an exchange of money, but not based on the evidence developed by the police before they stopped Mr. Ber-ard’s car in this case.
The biggest problem in this case stems from competition between the narcotics unit and the patrol unit of the police department. The patrol division wanted to make some narcotics arrests and obtain a warrant to search a crack house. Apparently, the house at 650 Fourteenth Avenue South had a reputation for selling drugs. Our record contains hearsay information that neighbors had complained about drug activity at the house and that a search of the house about a month earlier had produced drugs. The primary officer involved in this case is a very experienced officer, but he was serving as a field training officer in the patrol division. At the suppression hearing, he was very proud of the fact that the search of this house following this stop and several other stops represented the first time that the patrol unit had executed such a warrant. Apparently this house was such a major sales location that, when the police finally executed that search warrant, they arrested a number of customers who came to the house to buy drugs while the police were conducting the search.
Because the patrol unit apparently did hot coordinate with the narcotics unit, we have no evidence that the officers involved in this case had any reliable proof of sales from this house prior to the day in question. There were no controlled purchases of cocaine from the home on or near the day of these events. No one knew who was in the home, much less whether they were known drug dealers. Although the training officer crept up close to the house, there was no long-term observation of the house and no documentation of such an investigation.
As I examine this record and the six factors suggested in Revels, it appears that (1) the police department did not assign a trained and experienced team of officers to conduct a surveillance; (2) the surveillance procedures were creative, but not well-controlled; (3) there was no effort to preserve evidence to present at the suppression hearing; (4) although the location had a reputation for cocaine and the search a month earlier may have created some possibility that criminal activity was still ongoing, the police were not prepared to justify their actions based on actual proof of recent, ongoing drug activity; (5) the officers had no knowledge of the parties involved; and (6) the officers did provide some detailed evidence concerning the stop of Mr. Berard, but that evidence was insufficient to establish a basis for a stop in this case.