890 So.2d 1278 (2005)
STATE of Florida, Appellant,
v.
Pedro Antonio MARRERO, Appellee.
No. 2D03-4902.
District Court of Appeal of Florida, Second District.
January 21, 2005.
*1279 Charles J. Crist, Jr., Attorney General, Tallahassee, and Susan M. Shanahan, Assistant Attorney General, Tampa, for Appellant.
Christopher J. Dale, Tampa, for Appellee.
WALLACE, Judge.
The State of Florida appeals the trial court's order that suppressed physical evidence seized from Pedro Antonio Marrero and inculpatory statements made by him subsequent to an investigatory stop of the vehicle he was driving. Because the trial court erred in finding that the officers did not have a well-founded suspicion of criminal activity sufficient to justify the investigatory stop, we reverse the suppression order, and we remand this case to the trial court for further proceedings.

*1280 The Facts

In August 1998, an individual to whom we shall refer as "B.F." owned an auto body shop located on Nebraska Avenue in Tampa. Prior to Marrero's arrest, Deputy Travis Valles of the Hillsborough County Sheriff's Office received information that B.F. was dealing in stolen cars  specifically Lincolns  from his body shop. At that time, Deputy Valles had been employed by the sheriff's department for four years. He had also completed specialized training in the investigation and detection of auto theft. Deputy Valles and his squad set up a surveillance operation on B.F.'s business. During the surveillance operation, the deputies observed various Lincolns entering and leaving the body shop. One of these vehicles was a gold Lincoln Town Car that appeared to be relatively new. Deputy Valles followed the gold Town Car to a different body shop located on Waters Avenue that was owned and operated by Marrero.
Deputy Valles checked the license plate on the gold Town Car and learned that it was registered to a 1990 Lincoln. This fact was noteworthy because the gold Town Car appeared to be much newer than an eight-year old vehicle.[1] Deputy Valles had also learned in the course of his investigation that a secretary employed at B.F.'s body shop had rented a 1997 Lincoln Town Car from a local car rental agency and reported it stolen from the University Square Mall. Deputy Valles believed that the gold Town Car might be that vehicle.
Investigating further, Deputy Valles visited a local Lincoln dealership and compared the shape of the body of the Town Cars manufactured in 1990 to the newer models, including those manufactured in 1997. Deputy Valles noted substantial differences between the 1990 Town Car and the 1997 model.[2] Based on his comparison of the differences between the body shapes of the vehicles from the different model years and the relatively new appearance of the gold Town Car, Deputy Valles suspected that the vehicle he had seen leaving B.F.'s body shop and entering Marrero's body shop was a 1997 vehicle and not a 1990 model. Deputy Valles also suspected that the license tag on the vehicle was not the one assigned to it and that the gold Town Car was probably a stolen vehicle.
Deputy Valles communicated the results of his investigation to the other members of his squad, including Deputy Jose Sanchez. On August 13, 1998, Deputy Sanchez observed the gold Town Car at the drive-through window of a fast food restaurant in Tampa. Marrero was driving the vehicle, and Deputy Sanchez stopped him as soon as he drove away from the drive-through window. After detaining Marrero, Deputy Sanchez determined that the gold Town Car was actually a later model as Deputy Valles had suspected and that the license plate on the car was assigned to a different vehicle  a 1990 Lincoln Town Car. Deputy Sanchez also discovered that the vehicle identification numbers (VINs) on the vehicle had been altered. Marrero was not fluent in English, and Deputy Sanchez spoke to him in Spanish. After Deputy Sanchez gave *1281 Marrero the Miranda[3] warnings, Marrero executed a written consent to be interviewed. Marrero told Deputy Sanchez that the gold Town Car had been stolen in New York and re-registered in Florida after the VINs had been altered.
During the period of his detention, Marrero also signed a written consent for the search of his auto body shop. At the body shop, the deputies found additional stolen vehicles, 1075.3 grams of cocaine, a scale, a grinder with cocaine residue, a supply of baggies, and a gun. One of the deputies conducting the search showed a package containing the drug to Marrero and asked, "Cocaine?" Marrero responded, "Si, cocaina."

The Proceedings in the Trial Court
Marrero was charged with trafficking in cocaine, a violation of section 893.135(1)(b)(1)(c), Florida Statutes (1997); selling or possessing a motor vehicle with altered vehicle identification numbers, a violation of section 319.33(1)(d), Florida Statutes (1997); and possession of drug paraphernalia, a violation of section 893.147(1), Florida Statutes (1997). Marrero moved to suppress the inculpatory statements he had made and the physical evidence seized from him on the ground that they were the fruits of an illegal detention. After a hearing on the motion, the trial court ruled that Deputy Valles did not have a well-founded suspicion that Marrero was engaged in criminal activity sufficient to support an investigatory stop and granted the motion to suppress. The trial court based its ruling on its comparison of photographs of a 1990 Lincoln Town Car and a 1997 Lincoln Town Car. The prosecutor had submitted the photographs at the hearing to illustrate the differences between the configuration of the body of Town Cars for each of the two model years in question. Deputy Valles did not see the photographs until the hearing, and they played no part in his decision to initiate an investigatory stop of Marrero. On the contrary, the prosecutor took the photographs after the event for use as demonstrative aids at the hearing.

The Standard of Review
We employ a mixed standard of review in considering the trial court's ruling on Marrero's motion to suppress. The trial court's determination of historical facts enjoys a presumption of correctness and is subject to reversal only if it is not supported by competent, substantial evidence in the record. However, the trial court's determinations on mixed questions of law and fact and its legal conclusions are subject to de novo review. See Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); Connor v. State, 803 So.2d 598, 608 (Fla.2001); State v. Hendrex, 865 So.2d 531, 533 (Fla. 2d DCA 2003), review denied, 879 So.2d 621 (Fla.2004).

Analysis
In order to justify an investigatory stop, a police officer must have a well-founded suspicion that the person detained has committed, is committing, or is about to commit a crime. See § 901.151(2), Fla. Stat. (1997); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Parsons v. State, 825 So.2d 406, 408 (Fla. 2d DCA 2002). In considering whether the officer has a particularized and objective basis for suspecting the person stopped of criminal activity, the totality of the circumstances as viewed by an experienced police officer must be taken into account. United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); Williams v. State, 769 So.2d 404, 406 (Fla. 2d DCA 2000). A consideration of the totality of *1282 the circumstances of each case to determine whether the detaining officer has a well-founded suspicion of criminal activity "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that `might well elude an untrained person.'" United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (quoting Cortez, 449 U.S. at 418, 101 S.Ct. 690). Although an officer making an investigatory stop "must be able to articulate something more than an `inchoate and unparticularized suspicion or "hunch,"'" United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (citing Terry, 392 U.S. at 27, 88 S.Ct. 1868), the "level of suspicion required for [such a] stop is obviously less demanding than that for probable cause," id. (citing United States v. Montoya de Hernandez, 473 U.S. 531, 544, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985)).
In assessing the validity of the investigatory detention at issue in this case, the trial court was required to examine the totality of the circumstances as viewed by Deputy Valles, an experienced officer who had expertise in the investigation and detection of auto theft. Before Marrero was detained, Deputy Valles had received information that B.F. was dealing in stolen cars  specifically Lincolns  from his auto body shop. Deputy Valles also knew that a secretary employed at B.F.'s shop had rented a 1997 Lincoln Town Car from a local car rental agency and reported it stolen from a shopping mall. As a result of surveillance on B.F.'s place of business, Deputy Valles saw the gold Town Car entering and leaving B.F.'s shop. Deputy Valles followed the gold Town Car to a different body shop owned and operated by Marrero. Deputy Valles checked the license plate on the gold Town Car and learned that it was assigned to a 1990 model Town Car. Because the events at issue occurred in 1998, a 1990 model car would then have been at least eight years old. However, the gold Town Car had the appearance of a substantially newer vehicle. At that time, a 1997 model would have been approximately one year old. Deputy Valles visited a Lincoln dealership and compared the profile of the 1990 model Town Cars to the more recent models, including those manufactured in 1997. From this investigation, he learned that the configuration of the body of the 1990 model Town Cars differed substantially from the more recent models. The gold Town Car resembled one of the newer models, not a 1990 model.
These facts  considered together  were more than sufficient to raise a well-founded suspicion that Marrero had attached to the gold Town Car a license plate that was not the one assigned to that vehicle. This would have been a violation of section 320.261, Florida Statutes (1997), a second-degree misdemeanor. Further, the totality of the circumstances as viewed by Deputy Valles, an experienced officer with specialized training in the investigation and detection of auto theft, was sufficient to raise a reasonable suspicion that Marrero was in possession of a stolen vehicle, possibly the 1997 Town Car that had been reported stolen by B.F.'s secretary.[4] Although Deputy Valles was not present when Marrero was detained, the fellow officer rule allowed the deputies who detained Marrero to act based on the information Deputy Valles had previously gathered and communicated to them. See *1283 Voorhees v. State, 699 So.2d 602, 609 (Fla.1997); Dep't of Highway Safety & Motor Vehicles v. Porter, 791 So.2d 32, 34 (Fla. 2d DCA 2001).
We find support for our holding in State v. Rodriguez, 542 So.2d 454 (Fla. 3d DCA 1989), a case involving the temporary detention of the driver of a suspected stolen vehicle that resulted from an alert police officer's observations about the vehicle's appearance. In Rodriguez, the officer "observed the defendant driving a car with four mismatched wheels, each held on by a single lug nut." Id. at 455. Based on this lone observation and his past experience with stolen vehicles, the officer suspected that the car had been stolen. After the car was stopped, a computer check revealed that it was stolen, and the defendant was charged with grand theft. The defendant filed a motion to suppress all evidence relating to the stolen vehicle. The trial court granted the motion and suppressed the challenged evidence. The State appealed the suppression order, and the Third District reversed. The court found that the investigatory stop of the defendant was valid, stating: "Here, the initial observations of the automobile gave the officer founded suspicion to stop the defendant because the circumstances indicated that the vehicle was very likely stolen." Id.
In this case, Deputy Valles had substantially more information indicating that the gold Town Car was stolen than was found sufficient to justify the investigatory stop at issue in Rodriguez. Moreover, Deputy Valles had information  not present in Rodriguez  indicating that the license plate on the suspect vehicle was not the license plate assigned to that vehicle. This is not a case involving a stop of a suspected stolen vehicle based on a "profile" incorporating only mundane and unremarkable factors as in Clark v. State, 677 So.2d 903 (Fla. 2d DCA 1996), or a description of a stolen vehicle too general to support a well-founded suspicion as in Cox v. State, 586 So.2d 1321 (Fla. 2d DCA 1991).
The trial court erred in finding that Deputy Valles did not have a reasonable suspicion necessary to authorize an investigatory stop. The trial court improperly reached its conclusion based on a review of photographs that were never considered by Deputy Valles in arriving at the decision to detain Marrero and without giving due consideration to all of the facts known to the officer as viewed in the light of his specialized training and experience. Accordingly, we reverse the trial court's order, and we remand this case to the trial court for further proceedings.
Reversed and remanded for further proceedings.
STRINGER and VILLANTI, JJ., Concur.
NOTES
[1] The events at issue in this case occurred in August 1998. For reasons unexplained in the record, the hearing on the motion to suppress was not held until July 2003, almost five years later.
[2] Deputy Valles described some of these differences at the hearing on the motion to suppress as follows: "The front end of the 1990 Lincoln was more of a boxier type with a large headlight and a larger grill and the 1997 Lincoln was more of an aerodynamic shape with smaller headlights and a smaller grill."
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[4] Marrero told the deputies that the gold Town Car had been stolen in New York, not from a local shopping center. Nevertheless, it was a 1997 model, the same model year as the vehicle reported stolen by B.F.'s secretary.