963 So.2d 366 (2007)
Robert STRICKROTH, Appellant,
v.
STATE of Florida, Appellee.
No. 2D06-2768.
District Court of Appeal of Florida, Second District.
August 31, 2007.
*367 Peter M. Collins, Sarasota, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Dale E. Tarpley, Assistant Attorney General, Tampa, for Appellee.
LaROSE, Judge.
Robert Strickroth appeals his conviction for cocaine possession; he pleaded no contest, reserving the right to appeal the trial court's denial of his motion to suppress evidence. See Fla. R.App. P. 9.140(b)(2)(A)(i). The trial court sentenced Mr. Strickroth to eighteen months of probation. Because the police lacked probable cause to arrest Mr. Strickroth, we reverse.

Facts
Following the receipt of anonymous complaints over several weeks about illegal drug transactions, Sarasota Police Officer Shanafelt and several other officers set up surveillance of an apartment complex. The surveillance was an impromptu endeavor of these patrol officers. Officer Shanafelt had been a police officer for eight years. He had no formal narcotics training but had made approximately seventy-five drug arrests. Officer Shanafelt had arrested someone near the apartment complex two weeks earlier for possession of cocaine.
During his surveillance, Officer Shanafelt, from a distance, saw two men "counting things out in their hands." He did not see what they were holding. Nevertheless, he interpreted this as "indicative of somebody selling rock cocaine." From about fifty feet away, Officer Shanafelt observed what he believed were three drug transactions. The first involved an encounter between the two men and a man on a bicycle. The bicyclist left the area without incident. The second involved a pedestrian who exchanged something with the two men, then left the area. Although he did not see what was exchanged, Officer Shanafelt called a nearby patrol unit and instructed them to stop and investigate the pedestrian whom he described. Cocaine was found on the pedestrian, who described the seller to the patrol officer. *368 Our record is silent as to whether Officer Shanafelt knew these facts when he observed the third transaction.
In the third transaction, Officer Shanafelt saw one of the two men he was watching  whom we now know matched the description given by the pedestrian in the second encounter  approach a white van with a stripe and exchange something with the driver. Again, Officer Shanafelt did not see what changed hands. He was confident, however, that he had seen a drug transaction. He, again, called a nearby patrol unit and directed them to stop the van.
Officer Worthington, who responded to the call, stopped the van and ordered the driver, Mr. Strickroth, to exit the vehicle. No one else was in the van. Officer Worthington's practice was to assume that everyone she stopped was armed. Accordingly, she immediately handcuffed Mr. Strickroth. As it turned out, Mr. Strickroth was not armed and Officer Worthington had no objective information suggesting that he was armed or dangerous. Two other officers arrived promptly at the scene. They put Mr. Strickroth in their police car and searched him. They found cocaine in his pocket.
In denying Mr. Strickroth's motion to suppress, the trial court concluded that the police had probable cause to believe that he possessed cocaine. The trial court specifically found that Mr. Strickroth was arrested when Officer Worthington ordered him out of the van and handcuffed him.

Analysis
Florida law recognizes three levels of police-citizen encounters: (1) a consensual encounter involving minimal police contact in which the citizen is free to leave; (2) an investigatory stop requiring "a well-founded, articulable suspicion of criminal activity"; and (3) an arrest supported by "probable cause that a crime has been or is being committed." Popple v. State, 626 So.2d 185, 186 (Fla.1993). The parties do not dispute that Officer Worthington had reasonable suspicion to conduct an investigatory stop of Mr. Strickroth. See id. at 187.
But, the trial court concluded that Mr. Strickroth was under arrest the moment Officer Worthington ordered him out of the van and immediately handcuffed him. The record supports this factual determination, and we see no legal basis to disturb the trial court's ruling on this point. See State v. Glatzmayer, 789 So.2d 297, 301 (Fla.2001). Thus, we must consider whether Officer Worthington had probable cause to arrest Mr. Strickroth. We recognize that Officer Worthington acted on instructions from Officer Shanafelt. Consequently, our examination necessarily focuses on whether Officer Shanafelt had probable cause that could be imputed to Officer Worthington.[1]
"[R]easonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause." Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); State v. Hendrex, 865 So.2d 531, 534 (Fla. 2d DCA *369 2003). Probable cause to arrest, however, demands a heightened level of certainty about the suspect's involvement in a crime. Revels v. State, 666 So.2d 213, 215-16 (Fla. 2d DCA 1995). Factors supporting a finding of probable cause include (1) evidence of the officers' training and experience in drug investigations; (2) well-planned and well-controlled surveillance procedures; (3) actual proof of the area's history of drug activity; (4) detailed proof of prior drug sales immediately preceding the arrest; (5) prior knowledge of a suspect's involvement in drug activity; and (6) a detailed written arrest report that confirms factual details that establish probable cause. Id. at 216-17. Based on the record before us, we conclude that Officer Shanafelt and, by extension, Officer Worthington, lacked probable cause to arrest Mr. Strickroth.
As noted earlier, Officer Shanafelt had no formal narcotics training and was participating in what can be best described as a spontaneous surveillance. Although Officer Shanafelt had made a drug arrest in the general area two weeks earlier, the surveillance was set up based on anonymous complaints. Our record does not disclose that Officer Shanafelt had any prior knowledge concerning Mr. Strickroth's drug activity or whether the two men he was watching were known drug dealers. Significantly, we cannot say that Officer Shanafelt, at the time he observed the encounter with Mr. Strickroth, knew that the pedestrian from the second transaction had been arrested with cocaine obtained from a person whom Officer Shanafelt later saw with Mr. Strickroth. Particularly important is the fact that Officer Shanafelt did not see cash or drugs change hands in any of the three transactions he observed. In Revels, 666 So.2d 213, we held that the surveilling officers had probable cause to radio a patrol officer to stop and search the defendant. Revels, however, involved experienced narcotics officers who actually saw currency exchanged for a small object. See id. at 214. That the officers saw money exchanged was "critical to our decision." Id. at 215.
Our decision in Burnette v. State, 658 So.2d 1170, 1171 (Fla. 2d DCA 1995), is more to the point. There, the officers saw a "hand-to-hand" transaction, but saw no money or drugs change hands. The surveilling officers radioed other officers, who stopped Mr. Burnette's car and found cocaine. Id. Although the officers had reasonable suspicion for an investigatory stop, we held that they lacked probable cause for an arrest. Id. We come to the same conclusion here.
Based on Officer Shanafelt's observations and directions, Officer Worthington had reasonable suspicion to conduct an investigatory stop. As the trial court correctly concluded, however, she immediately arrested Mr. Strickroth. Burnette compels us to conclude that the officers arrested Mr. Strickroth without probable cause. See id.; Cocke v. State, 889 So.2d 132, 135 (Fla. 4th DCA 2004); Johnson v. State, 813 So.2d 1027, 1028 (Fla. 3d DCA 2002) (holding that handcuffing temporary detainee was improper where not reasonably justified by threat to officer's safety or suspect's attempt to flee). Consequently, the trial court should have granted the motion to suppress. Mr. Strickroth's conviction cannot stand.
Reversed.
SALCINES and VILLANTI, JJ., Concur.
NOTES
[1] "[T]he collective knowledge of police investigating a crime is imputed to each member under a rule of law often called the fellow officer rule' or `collective knowledge doctrine.'" Johnson v. State, 660 So.2d 648, 657 (Fla.1995); see also State v. Marrero, 890 So.2d 1278, 1282 (Fla. 2d DCA 2005). It can involve direct communications between officers who have sufficient information and the officer who stops the suspect, or it can involve general communications among officers of whom at least one possesses the required level of suspicion. See State v. Peterson, 739 So.2d 561, 565 (Fla.1999).