846 So.2d 643 (2003)
Terry WALKER, Appellant,
v.
STATE of Florida, Appellee.
No. 2D01-1410.
District Court of Appeal of Florida, Second District.
May 30, 2003.
*644 James Marion Moorman, Public Defender, and William L. Sharwell, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Danilo Cruz-Carino, Assistant Attorney General, Tampa, for Appellee.
SALCINES, Judge.
Terry Walker appeals the denial of a dispositive motion to suppress the physical evidence obtained as a result of an allegedly illegal search. We reverse.
At the hearing on the motion to suppress, a Tampa Police Department officer testified that while patrolling a Tampa Housing Authority area described as a high drug area, he observed what he characterized as a "hand-to-hand transaction" between Walker and a man only identified as Mr. Butler. More specifically, the officer stated that the two men were "real close up tight with each other" and the men were looking down into Walker's hand. The officer stated that both men had their backs turned to him, then indicated that only Walker had his back turned to the officer. He stated, "I could see what they were doing."
On cross-examination the officer admitted that when he saw Walker and Mr. Butler he could not actually see what it was that the two men were observing in Walker's hand. The officer testified, "[A]s I pulled up on the side I could see they were both looking down in his hand." The officer, however, candidly acknowledged that he could not see the object, and he did not see any money exchange hands.
When the officer approached the two men, other people who were standing in the area scattered. The officer asked the two men to come to him, and he "detained both of them." He then asked Walker alone to approach him and requested permission to perform a patdown. Permission was given, and the officer felt "little square objects" in Walker's front pants' pocket which he believed to be crack cocaine. The officer asked Walker for permission to retrieve the items, consent was given, and cocaine was recovered.
The meeting between Walker and the police officer was more than a mere police-citizen encounter. When the *645 officer detained the two men, singled out Walker, and requested that he come to him, the meeting was transformed into an investigative stop. In such a situation, a police officer may temporarily detain a person if the officer has a reasonable suspicion that the person has committed, is committing, or is about to commit a crime. See Coney v. State, 820 So.2d 1012, 1013-14 (Fla. 2d DCA 2002). Whether an officer has a founded suspicion for a stop depends upon the totality of the circumstances in light of the officer's knowledge and experience. Belsky v. State, 831 So.2d 803, 804 (Fla. 4th DCA 2002). A bare suspicion or mere "hunch" that criminal activity may be occurring is not sufficient. Id.
As this court noted in Burnette v. State, 658 So.2d 1170 (Fla. 2d DCA 1995), it is not absolutely necessary for an officer to observe drugs or money changing hands in order to develop the founded suspicion necessary to temporarily detain a citizen to investigate whether a drug offense has been committed. See also Ford v. State, 783 So.2d 284, 286 (Fla. 2d DCA 2001). Other factors considered by the Burnette court included the officer's narcotics experience, the reputation of the location for drug transactions, that there had been an extended period of surveillance, and the history of previous multiple arrests from that site. In Burnette, although the police officer had not actually seen drugs or money exchange hands, the court found all of the factors, together with the nature of the "drive-up situation" and exchange between Burnette and a known dealer, gave rise to a reasonable suspicion that Burnette had engaged in an illegal activity. Burnette, 658 So.2d at 1171.
In the present case, the testimony presented at the hearing was very brief. When asked about his experience with narcotics, the officer testified, "Well, through numerous arrests I've had I've had dealings with crack cocaine." The officer also informed the court that he had completed forty hours of narcotics training. The officer indicated that the location where he observed Walker and Mr. Butler was a high drug area and identified Mr. Butler by name. However, the officer did not state that Mr. Butler was a known drug user or drug dealer. The officer merely had been patrolling the area that evening when he observed Walker and Mr. Butler. He did not testify that the location had been under surveillance or that there had been other arrests in that area. The arrest affidavit indicates that Walker was arrested at 7:39 p.m. in July 2000. The totality of the circumstances does not support a finding of reasonable suspicion in the present case.
Further, this is not a situation as in Copeland v. State, 756 So.2d 180 (Fla. 2d DCA 2000), where Walker or Mr. Butler attempted to elude the police officer or acted nervous or suspicious upon being approached. Walker and Mr. Butler did not attempt to leave the area, and the officer described Walker as "very cooperative."
Under the limited facts in this case, the officer did not have a reasonable suspicion that Walker had committed, was committing, or was about to commit a crime. Due to the fact that the stop was illegal, the search of Walker was also illegal because the State failed to prove a break in the chain of illegality. See State v. Paul, 638 So.2d 537, 538 (Fla. 5th DCA 1994). Accordingly, we reverse the order denying the motion to suppress and remand with directions to discharge Walker.
Reversed and remanded.
FULMER and CANADY, JJ., concur.