991 So.2d 928 (2008)
STATE of Florida, Appellant,
v.
Jermaine Eugene WALKER, Appellee.
No. 2D07-4627.
District Court of Appeal of Florida, Second District.
August 20, 2008.
Rehearing Denied October 17, 2008.
*929 Bill McCollum, Attorney General, Tallahassee, and Elba Caridad Martin, Assistant Attorney General, Tampa, for Appellant.
James Marion Moorman, Public Defender, and Brad Permar, Assistant Public Defender, Bartow, for Appellee.
FULMER, Judge.
Charged with delivery of cocaine, possession of cocaine, possession of cannabis, obstructing with violence, and obstructing without violence, Jermaine Walker filed a motion to suppress evidence. The State has appealed the trial court's order granting Walker's motion. We reverse because the undisputed evidence in the record demonstrates that the police had probable cause to arrest Walker.
Officer Barton of the Tampa Police Department testified that he was working with a confidential informant (CI) doing "buy-busts." The two were in a van, the CI driving and the officer partially hidden in a rear seat. At one point a man on the street flagged down the van. The CI communicated to the man that he wanted to purchase crack cocaine. The man said to pull up and park and that he would get the cocaine. The man walked over to Walker, who was sitting in a chair in front of a yellow house near where the van had stopped. The man and Walker went through a hand motion as if Walker was handing something to the man; Officer Barton acknowledged that he did not see anything pass from one hand to the other. *930 The man then walked back to the vehicle, hand closed, and gave the CI cocaine from the same hand that he had used with Walker in the apparent hand-over process. In exchange, the CI handed the man $20.
Once the transaction between the CI and the man was complete, Officer Barton radioed two other officers to detain Walker. They arrived seconds later and approached Walker. Walker immediately took flight into the yellow house. The officers kicked the door open and followed Walker inside.[1]
In its order, the trial court found that the two officers intended to detain Walker in accordance with Officer Barton's request, that is, to conduct a Terry stop,[2] which, the court wrote, required "a well-founded articulable suspicion of criminal activity." The court found
that Officer Barton observed [the man] hold out his hand with an open palm, palm up. . . . [The officer] observed [Walker] take his hand and hold it over it and open his fingers as if he was dropping something into [the man]'s hand.
The court found "that by Officer Barton's admission, he did not see drugs or money exchange hands and could not testify as to whether any object exchanged [sic] hands." The court concluded that Officer Barton had only, at best, a "bare suspicion" of criminal activity. As such, the court concluded, the officers did not have sufficient justification to stop Walker. The court therefore granted Walker's motion to suppress evidence.
The trial court is correct in reciting that an officer's bare suspicion of criminal activity is insufficient to justify an investigatory, or Terry, stop. See Parsons v. State, 825 So.2d 406, 408 (Fla. 2d DCA 2002) ("To justify an investigatory stop, a police officer must have a well-founded suspicion that the person has committed, is committing, or is about to commit a crime. § 901.151(2), Fla. Stat. (1999); see also Terry, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Bare suspicion or a mere hunch is insufficient." (Some citations omitted.)). However, in reaching its conclusion, the trial court relied on drug-related case law concerning scenarios distinct from the one at issue here. The trial court cited Peabody v. State, 556 So.2d 826 (Fla. 2d DCA 1990), in which this court ruled that officers conducting surveillance in a drug neighborhood may have had a bare suspicion, but not a founded suspicion, of criminal activity when they saw a man in a car extend his open hand, palm up, toward the defendant but did not observe the transfer of any substance from one man to the other. As such, the subsequent stop of the defendant, at which time the officers found drugs on him, was illegal, requiring reversal. Id. at 828. Similarly, in Messer v. State, 609 So.2d 164 (Fla. 2d DCA 1992), an officer saw an apparent transfer of something between the defendant and another man but could not identify what, if anything, was transferred. Another officer moved in and stopped the defendant's truck, prompting the defendant to drop a piece of rock cocaine from the window. This court reversed because the motion triggering the stop raised only a bare suspicion of criminal activity. Id. at 165. Finally, Walker v. State, 846 So.2d 643 (Fla. 2d DCA 2003), concerned an apparent hand-to-hand transaction in which the officer did not see money or a substance change hands. Weighing several relevant *931 factors,[3] we concluded that founded suspicion did not exist and reversed. Id. at 645.
In each of these scenarios, as here, law enforcement officers observed hand-to-hand contact between two individuals but were unable to see what, if anything, changed hands. Unlike the situation here, however, the officers or their agents were not themselves involved in the transaction. See Peabody, 556 So.2d at 827 (police, on surveillance in neighborhood known for drug activity, witnessed a hand-to-hand motion and then converged on the defendant); Messer, 609 So.2d at 165 (officer observed apparent transaction through binoculars); Walker, 846 So.2d at 644 (officer, on patrol in high drug area, approached the defendant after observing a hand-to-hand motion). Here, in contrast, there was an uninterrupted process that began with hand-to-hand contact between Walker and the other man and ended with the transfer of cocaine from the other man to the CI in Officer Barton's immediate presence. Furthermore, in the earlier scenarios the officers came upon the contraband only after detaining or attempting to detain the suspect. Here, the drug transaction was complete and the drug visually identified before the police detained Walker.
"Probable cause to arrest exists when the totality of the facts and circumstances within the officer's knowledge would cause a reasonable person to believe that an offense has been committed and that the defendant is the one who committed it." Revels v. State, 666 So.2d 213, 215 (Fla. 2d DCA 1995).
This court has held that police have probable cause to arrest a suspect when they observe a bag containing what appears to be cocaine on [the suspect's] person. State v. James, 693 So.2d 1086, 1087-88 (Fla. 2d DCA 1997) (holding that police had probable cause to arrest appellee after they saw a plastic bag with a white powdery substance in his mouth); Houston v. State, 925 So.2d 404, 408 (Fla. 5th DCA 2006) (determining that there was probable cause to arrest appellant after observing white powder in a folded ten-dollar bill in one hand and a plastic baggie in the other hand); Curtis v. State, 748 So.2d 370, 372 (Fla. 4th DCA 2000) (concluding that police had probable cause to arrest appellant after observing a crack cocaine rock inside his mouth, even though officer testified that object could have been something else but such was "highly unlikely").
State v. Castro-Medina, 959 So.2d 828, 830 (Fla. 2d DCA 2007). In short, if police observe what reasonably appears to be an illegal drug on a suspect's person, they have probable cause to arrest the suspect. Here, admittedly, the police did not see cocaine on Walker's person. But Officer Barton testified that after the hand-to-hand motion between Walker and the other man, the man's hand remained closed until he presented the cocaine to the CI. We conclude that the totality of the facts and circumstances observed by Officer Barton "would cause a reasonable person to believe that an offense ha[d] been committed and that the defendant [was] the one who committed it." Revels, 666 So.2d at 215.
Because the police had probable cause to arrest Walker, we reverse the order granting *932 the motion to suppress and remand for further proceedings.
Reversed.
NORTHCUTT, C.J., and CANADY, J., Concur.
NOTES
[1] Very little testimony was taken about what happened inside the house. Walker was apparently arrested shortly after the officers' entry.
[2] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[3] See Burnette v. State, 658 So.2d 1170, 1171 (Fla. 2d DCA 1995) (listing factors that should be weighed when assessing whether reasonable suspicion existed in similar scenarios: "the officer's narcotics experience, the reputation of the location for drive-up transactions, the extended period of surveillance, and the history of multiple arrests from that site").