DAMOORGIAN, J.
 

 Dorothy Ray appeals an order denying her motion to suppress drug evidence obtained during an investigatory traffic stop which led to her arrest for possession of cocaine. After the trial court denied Ray’s motion, she entered a no contest plea, reserving her right to appeal the order. On appeal, Ray argues that at the time the arresting officer activated her emergency lights, the officer did not have a reasonable suspicion that Ray had committed a crime. Therefore, the traffic stop was illegal and the evidence obtained incident to the stop cannot be used against her. We agree and reverse.
 

 At the hearing for the motion to suppress, the arresting officer testified that she was monitoring the neighborhood where Ray’s arrest took place in response to resident complaints of drug dealing. The officer observed Ray drive up and stop in
 
 *97
 
 the middle of the road. While Ray remained inside the vehicle, an unknown adult male approached the passenger side of the vehicle. The officer observed some sort of hand-to-hand exchange between Ray and the unidentified male. Although the officer could not identify the objects exchanged between the two, she perceived the exchange to be a drug transaction.
 

 After the exchange, the officer followed Ray as she drove away. The officer activated the lights on her police cruiser in an attempt to effectuate a traffic stop. Ray subsequently drove through a stop sign without stopping and the officer pulled her over. As the officer approached, Ray dropped a small amount of a white substance out of her vehicle’s window. The substance was recovered and tested positive for cocaine.
 

 Ray argues that the officer could not form a reasonable suspicion that she participated in a drug transaction. The State counters that, based on the totality of the circumstances, including the nature of the exchange, the officer’s narcotics training, and the location’s reputation as a drug area, the officer could form a reasonable suspicion that a drug transaction occurred. Alternatively, the State argues that Ray was detained and investigated because of a traffic law violation.
 

 “A trial court’s ruling on a motion to suppress comes to this Court clothed with a presumption of correctness, so that trial court resolution of factual and eviden-tiary conflicts should not be disturbed on appeal.”
 
 Stone v. State,
 
 856 So.2d 1109, 1111 (Fla. 4th DCA 2003). Legal conclusions, however, are reviewed de novo.
 
 Backus v. State,
 
 864 So.2d 1158, 1159 (Fla. 4th DCA 2003).
 

 To stop and detain a person for investigation, an officer must have a reasonable suspicion that the person has committed, is committing, or is about to commit a crime.
 
 Popple v. State,
 
 626 So.2d 185, 186 (Fla.1993). “In order not to violate a citizen’s Fourth Amendment rights, an investigatory stop requires a well-founded, articulable suspicion of criminal activity. Mere suspicion is not enough to support a stop.”
 
 Id.
 
 (citing
 
 Carter v. State,
 
 454 So.2d 739, 741 (Fla. 2d DCA 1984)). A court should look at the totality of the circumstances to determine if the conditions supporting a reasonable suspicion existed.
 
 Santiago v. State,
 
 941 So.2d 1277, 1279 (Fla. 4th DCA 2006) (citing
 
 Belsky v. State,
 
 831 So.2d 803, 804 (Fla. 4th DCA 2002)).
 

 Factors which can be evaluated in determining whether a reasonable suspicion exists in an alleged drug transaction include (a) whether the officer can see either drugs or money being transferred; (b) the officer’s narcotics experience; (c) the reputation of the location for drug transactions; (d) the extent of the period of surveillance; and (e) the history of previous multiple arrests from that site.
 
 Id.
 
 (citing
 
 Burnette v. State,
 
 658 So.2d 1170, 1171 (Fla. 2d DCA 1995)). Courts have applied a combination of these factors in various degrees.
 

 It is not absolutely necessary for an officer to view the exchange of drugs to establish a reasonable suspicion of a drug transaction.
 
 Id.
 
 (citing
 
 Walker v. State,
 
 846 So.2d 643, 645 (Fla. 2d DCA 2003)). For example, in
 
 Burnette,
 
 the Second District concluded that the police could form a reasonable suspicion that a drug transaction took place because (a) the officer had extensive drug training; (b) the defendant was making an exchange with an identified known drug dealer; and (c) the transaction took place at a location where the police had previously made thirty to forty drug arrests. 658 So.2d at 1171. The court
 
 *98
 
 reached this conclusion even though the officer could not identify the objects exchanged in the transaction.
 
 Id.
 

 This Court has stated, though, that an “officer’s observation of hand-to-hand movements between persons in an area known for narcotics transactions,
 
 without more,
 
 does not provide a founded suspicion of criminal activity.”
 
 Belsky,
 
 831 So.2d at 804 (emphasis added);
 
 see also Messer v. State,
 
 609 So.2d 164, 165 (Fla. 2d DCA 1992) (“In those instances where no contraband was observed, the officer was deemed to have had only a ‘bare’ rather than a ‘reasonable’ suspicion that the defendant was engaged in criminal activity.”);
 
 Waddell v. State,
 
 652 So.2d 917, 917-19 (Fla. 4th DCA 1995) (holding that the observance of two unknown African-American males approaching a truck driven by a white male, without witnessing the exchange of drugs or money, did not amount to a reasonable suspicion).
 

 In this case, there were not enough factors present to support a finding of reasonable suspicion. The officer could not identify the objects exchanged and did not identify the individual involved in the exchange with Ray as a known drug dealer. The record does not indicate that the neighborhood had a history of extensive drug arrests; rather, it had only a general reputation as a high drug area. In cases where the transaction occurred within a high drug area, courts have refused to acknowledge a reasonable suspicion in the absence of other factors.
 
 See Panter v. State, 8
 
 So.3d 1262, 1264-66 (Fla. 1st DCA 2009) (concluding that a reasonable suspicion did not exist when an officer viewed a hand-to-hand transaction outside of a known narcotics house);
 
 Belsky,
 
 831 So.2d at 804-05 (holding that an officer, on patrol in high crime area, did not have a reasonable suspicion when he witnessed a hand-to-hand transaction without identifying the objects exchanged). Although the arresting officer had narcotics sale training, this fact does not compensate for the lack of other supporting factors.
 
 See Walker,
 
 846 So.2d at 645 (concluding that reasonable suspicion did not exist when the officer, who had performed numerous drug arrests and had forty hours of drug training, witnessed a hand-to-hand transaction in a high drug area but did not see any drugs or money change hands).
 

 The State alternatively argues that Ray’s traffic infraction constituted the commission of a crime which justified the officer’s seizure of her.
 
 See D.A. v. State,
 
 10 So.3d 674, 676 (Fla. 3d DCA 2009) (stating that “a seizure is permissible if the seizing officer has probable cause to believe a traffic infraction has occurred.”). Further, the State asserts that the arresting officer’s activation of the lights on her police vehicle did not constitute the beginning of the seizure. Rather, the seizure occurred subsequent to Ray’s violation of the traffic law. The State did not make this argument in the trial court.
 

 An appellate court may apply the “tipsy coachman” doctrine to affirm a lower court’s holding when the lower court reached the correct result despite using incorrect reasoning.
 
 See Dade County Sch. Bd. v. Radio Station WQBA,
 
 731 So.2d 638, 644-45 (Fla.1999). The tipsy coachman doctrine may be used when there is any evidence in the record which would support an alternate legal argument for affirmance, even if this argument was not raised in the lower court.
 
 Id.
 
 at 644. However, the tipsy coachman doctrine is not applicable in the instant case. At the hearing, the arresting officer stated she pulled over Ray because of the alleged drug transaction, not because of a traffic law violation. Furthermore, courts have routinely held that the use of emergency lights “ ‘evidences an investigatory stop
 
 *99
 
 rather than a consensual encounter because the use of emergency lights leads the citizen to believe that he or she is no longer free to leave.’ ”
 
 Errickson v. State,
 
 855 So.2d 700, 702 (Fla. 4th DCA 2003) (quoting
 
 Young v. State,
 
 803 So.2d 880, 882 (Fla. 5th DCA 2002)). When the arresting officer activated her emergency lights to pull over Ray, she commenced an investigatory stop -without reasonable suspicion. Ray’s traffic infraction occurred
 
 after
 
 the officer turned on her lights.
 

 We conclude that the arresting officer did not have a reasonable suspicion of a drug transaction to justify the investigatory stop. The officer could not identify the objects exchanged, the participant involved in the exchange with Ray was not a known drug dealer, and the officer was monitoring the area in response to reported drug deals rather than prior drug arrests. Because the arresting officer was not justified in performing the investigatory stop, the trial court erred in denying Ray’s motion to suppress. We therefore reverse Ray’s judgment and conviction and remand for further proceedings.
 

 Reversed and Remanded.
 

 FARMER and LEVINE, JJ., concur.