NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

CHRISTOPHER SHANE MILLER, )
)
Appellant, )
)
v. ) Case No. 2D15-1350
)
FLORIDA INSURANCE GUARANTY )
ASSOCIATION, INC.; and STEVEN )
SIMMONS, individually, )
)
Appellees. )
_____ )

Opinion filed July 15, 2016.

Appeal from the Circuit Court for
Hillsborough County; Mark R. Wolfe, Judge.

Richard N. Asfar, George A. Vaka, and
Nancy A. Lauten of Vaka Law Group,
Tampa; and R. Gale Porter, Jr., of Porter
Law Group, LLC, Tampa, for Appellant.

G. William Bissett, Jr. of Kubicki Draper,
P.A., Miami, for Appellee Florida Insurance
Guaranty Association, Inc.

No appearance for Appellee Steven
Simmons.


VILLANTI, Chief Judge.

Christopher Shane Miller appeals the trial court's order denying attorney's

fees.  Because the trial court did not err by denying Miller's motion, we affirm.

Miller held a sinkhole insurance policy issued through First Home Insurance Company. When Miller's home was damaged by sinkhole activity in 2009, he filed a claim. First Home denied the claim and Miller brought suit to enforce the policy. During the litigation, First Home became insolvent and Florida Insurance Guaranty Association (FIGA) automatically assumed Miller's policy by operation of law[1] in 2012. Miller then amended his complaint to add FIGA as a party, and FIGA sought an extension of time in order to investigate the claim. The trial court granted FIGA's motion but also ordered FIGA to "serve a response to [Miller's] amended complaint." As ordered, FIGA subsequently filed an answer containing eight affirmative defenses to the amended complaint. Importantly, none of the defenses denied that Miller's claim was covered by the policy. Instead, the defenses alleged: (1) Miller's action against FIGA is governed by section 631.50, Florida Statutes (2012); (2) Miller is not entitled to be unjustly enriched by any payments that would be in addition to payments received from another insurer for the same claim; (3) Miller is not entitled to public adjuster fees; (4) Miller is not entitled to damages outside the covered claims; (5) FIGA is entitled to a reduction for any amounts paid by another insurer; (6) Miller is not entitled to prejudgment interest; (7) Miller is not entitled to attorney's fees; and (8) "[Miller's] claim is barred, in whole or in part, or must be reduced to the extent [Miller has] failed to mitigate, minimize or avoid" the sinkhole damage.

Ultimately, Miller filed a motion for summary judgment, but by then FIGA completed its investigation, and it accepted coverage of the claim the day before the

---

[1]See § 631.57(1)(a)(1)(a), Fla. Stat. (2012) (stating that FIGA "shall . . . [b]e obligated to the extent of the covered claims existing . . . [p]rior to adjudication of insolvency" of a previous insurer).

- 2 -

trial court heard the motion. Miller then sought attorney's fees pursuant to section 631.70, Florida Statutes (2009). Section 631.70 states:

> The provisions of s. 627.428 providing for an attorney's fee shall not be applicable to any claim presented to the association under the provisions of this part, <u>except when the association denies by affirmative action, other than delay, a covered claim or a portion thereof</u>.

(Emphasis added.) Without expounding, the trial court found that FIGA's actions were a denial of Miller's claim "by affirmative action other than delay." But although Miller met the threshold requirement for attorney's fees under section 631.70, the trial court ruled that Miller's claim for attorney's fees was specifically precluded by language in section 631.54(3)(c), Florida Statutes (2012), which excludes attorney's fees for sinkhole claims from "covered claims":

> (3) "Covered claim" means an unpaid claim, including one of unearned premiums, which arises out of, and is within the coverage, and not in excess of, the applicable limits of an insurance policy to which this part applies, issued by an insurer, if such insurer becomes an insolvent insurer and the claimant or insured is a resident of this state at the time of the insured event or the property from which the claim arises is permanently located in this state. For entities other than individuals, the residence of a claimant, insured, or policyholder is the state in which the entity's principal place of business is located at the time of the insured event. The term does not include:
>
> . . . .
>
> (c) Any amount payable for a sinkhole loss other than testing deemed appropriate by the association or payable for the actual repair of the loss, <u>except that the association may not pay for attorney's fees</u> or public adjuster's fees <u>in connection with a sinkhole loss</u> or pay the policyholder. The association may pay for actual repairs to the property but is not liable for amounts in excess of policy limits.

(Emphasis added.) On this statutory basis, the trial court denied Miller's attorney's fees motion. It is from this denial that Miller appeals.

Miller raises two arguments on appeal. First, he argues that the trial court erred when it found that section 631.54(3)(c) invalidates the attorney's fees provision of section 631.70 because the rules of statutory interpretation allow both statutes to exist. Second, he argues that the trial court erred in applying the 2012 version of section 631.54(3)(c) to find that attorney's fees were not allowed because the pre-2011 version of section 631.54(3)(c), which does not contain the "sinkhole loss" exclusion under "covered claims," applies when the loss occurred in 2009. Because this court has already considered the second issue and rejected Miller's position, see Fla. Ins. Guar. Ass'n v. de la Fuente, 158 So. 3d 675 (Fla. 2d DCA), review granted, 171 So. 3d 115 (Fla. 2015), we confine our review to the first issue.

While orders on attorney's fees are generally reviewed for an abuse of discretion, see Grapski v. City of Alachua, 134 So. 3d 987, 989 (Fla. 1st DCA 2012), the issue before us is one of statutory interpretation, to which the de novo standard of review applies. See Borden v. E.-European Ins. Co., 921 So. 2d 587, 591 (Fla. 2006).

Regarding Miller's argument that the trial court erred when it found that the definition of "covered claims" in section 631.54(3)(c) precludes the grant of attorney's fees under section 631.70, we initially note that "[t]here exists a presumption that laws are passed with knowledge of all prior laws already on the books, as well as a presumption that the legislature neither intended to keep contradictory enactments in force nor to repeal a prior law without an express intention to do so." Floyd v. Bentley, 496 So. 2d 862, 863 (Fla. 2d DCA 1986). Accordingly, we must first endeavor to adopt

a scheme of statutory construction that reconciles any inconsistencies between sections 631.70 and 631.54(3)(c) and preserves the force and effect of both.  See id. at 864.

We find the language of section 631.54(3)(c) that excludes attorney's fees from "covered claims" in relation to a sinkhole loss to be reconcilable with the provisions of section 631.70.  This is so because the structure of section 631.54(3)(c) indicates that the legislature intended to exclude from "covered claims" any attorney's fees related to: (1) testing for a sinkhole loss, and (2) repair of a sinkhole loss.  These provisions are both very different from the language of section 631.70 that allows the insured to seek attorney's fees related to the enforcement of the policy itself.  Further, there are indeed other circumstances in which the insured could potentially seek to recover attorney's fees under his or her insurance policy and related to the testing for or repair of a sinkhole loss.  For example, if there was a dispute between the insured and a contractor who was making repairs to property damaged by a sinkhole, FIGA should not have to pay the attorney's fees associated with securing the contractor's compliance. Cf. Petty v. Fla. Ins. Guar. Ass'n, 80 So. 3d 313, 317 (Fla. 2012) (recognizing that an insurer might be liable to the insured to pay fees "by an express provision for which the party contracted"); Fla. Ins. Guar. Ass'n v. All The Way With Bill Vernay, Inc., 864 So. 2d 1126, 1129 (Fla. 2d DCA 2003) ("The law is well established that when an insurer unjustifiably refuses to defend its insured, the insurer is liable to the insured for the reasonable attorney's fees and other expenses incurred in defending the action brought by [a] third party as damages for the breach of contract.").  These would be fees specifically "in connection with a sinkhole loss" from which FIGA would be insulated from under 631.54(3)(c)'s exclusion from covered claims, as opposed to fees in

connection with the policy itself and FIGA's refusal to honor it.  Thus, we find that the language in section 631.54(3)(c) that excludes attorney's fees in sinkhole cases from "covered claims" does not override section 631.70's language that allows payment of attorney's fees when FIGA denies a claim by affirmative act, and further that the trial court erred when it found that the two provisions were irreconcilable.

Even though our finding dictates that an insured could recover attorney's fees from FIGA when FIGA denies a covered sinkhole claim by affirmative action, FIGA argues that this court should affirm the trial court's denial of attorney's fees based on the "tipsy coachman" doctrine.  This doctrine allows an appellate court to affirm when there is any basis in the record that would "support an alternate legal argument for affirmance, even if this argument was not raised in the lower court."  Ray v. State, 40 So. 3d 95, 98 (Fla. 4th DCA 2010); see also Muhammad v. State, 782 So. 2d 343, 359 (Fla. 2001) ("[T]he trial court's ruling . . . will be affirmed even if the trial court ruled for the wrong reasons, as long as the evidence or an alternative theory supports the ruling."), modified on other grounds by Marquardt v. State, 156 So. 3d 464 (Fla. 2015).  We now examine why, using the tipsy coachman doctrine, the trial court should be affirmed on the proper application of section 631.70.

Section 631.70 allows the insured to collect attorney's fees from FIGA but only "when the association denies by affirmative action, other than delay, a covered claim or a portion thereof."  Both below and on appeal, Miller points to FIGA's filing of an answer to his complaint, and the raising of affirmative defenses therein, as being proof

that FIGA denied his claim by affirmative action and not delay.[2]  To this point, Miller is correct in asserting that the filing of an answer with affirmative defenses can amount to an affirmative act of denial.  See Rahabi v. Fla. Ins. Guar. Ass'n, 71 So. 3d 241, 243 (Fla. 4th DCA 2011) (finding a denial by affirmative action when FIGA filed an answer to the complaint with seven affirmative defenses, including coverage denied).  But when the answer is filed pursuant to a court order and none of the affirmative defenses specifically deny coverage, section 631.70 is not satisfied.  See Fla. Ins. Guar. Ass'n v. Ehrlich, 82 So. 3d 849, 850 (Fla. 4th DCA 2011) (finding no denial by affirmative action when FIGA "was compelled to answer the complaint by the trial court" and the asserted affirmative defenses did not "explicitly deny the claim itself"); cf. Rahabi, 71 So. 3d at 243 ("FIGA's seven affirmative defenses alleged that the insureds' damages 'were not caused by a covered loss.'  By alleging that the insureds' damages '[were] not caused by a covered loss,' FIGA denied the insureds' claim 'by affirmative action.' ").  Here, FIGA filed its answer only after requesting an extension of time and being ordered by the trial court to file a response to the complaint.  Under these circumstances, simply filing an answer to the complaint is not considered a denial of coverage.  See Ehrlich, 82 So. 3d at 850.

Further, none of FIGA's affirmative defenses outright denied Miller's right to coverage.  While FIGA stated in its eighth affirmative defense that "[Miller's] claim is

_____

[2]In addition to arguing that FIGA denied his claim by affirmative action when it filed an answer with eight affirmative defenses, Miller also argues that FIGA denied his claim by: (1) ignoring his requests for neutral evaluation, (2) demanding a jury trial, (3) propounding discovery, and (4) opposing Miller's motion for summary judgment.  However, Miller fails to show how any of these are affirmative actions equivalent to a denial that would satisfy section 631.70.

barred, in whole or in part, or must be reduced to the extent [Miller has] failed to mitigate, minimize or avoid the alleged damage," we find that this affirmative defense, at most, was an assertion by FIGA that Miller might not be entitled to the full amount of the claim based on Miller's improper actions. Such an argument is not equivalent to a denial of coverage by affirmative action. See Fla. Ins. Guar. Ass'n v. Smothers, 65 So. 3d 541, 543 (Fla. 4th DCA 2011) (noting that "a dispute as to the amount to be paid is not a denial of coverage"). Our finding is further supported by the fact that Miller filed an affidavit on April 10, 2013, almost five months after FIGA filed its answer and affirmative defenses, and alleged that "[i]t is [his] understanding that FIGA has neither admitted nor denied [his] claim."

We must reject Miller's argument that the tipsy coachman doctrine cannot be applied here when to do so would be to grant FIGA affirmative relief on appeal without it having filed a cross-appeal. Once Miller filed an appeal, absent a need to capitulate obvious error, FIGA was required to defend the trial court's ruling on appeal. See Title & Trust Co. of Fla. v. Salameh, 407 So. 2d 1035, 1035-36 (Fla. 1st DCA 1981) (stating that the appellee's failure to file an answer brief in support of the trial court's ruling "places an undue burden on the appellate court," and noting that the alternative is for the appellee to "confess error and join appellant in seeking a reversal" (citing Carlin v. Carlin, 310 So. 2d 403 (Fla. 4th DCA 1975))). But because FIGA obtained a favorable result in the underlying action, albeit for the wrong reason, it was not required to appeal the underlying logic supporting that result, nor could it have. Moreover, our upholding the trial court's order on appeal does not afford FIGA affirmative relief, as Miller claims; it merely decides that, based upon the undisputed facts and controlling

authority, a reversal is not permissible. Indeed, Black's Law Dictionary defines "affirmative relief" as "[t]he relief sought by [an appellee] by raising a counterclaim or cross-claim that could have been maintained independently of the [appellant's] action." Black's Law Dictionary 1404 (9th ed. 2009).

In our view, this is a common-sense assessment that goes to the essence of a tipsy coachman analysis. To avoid this analysis would require us to turn a blind eye to the trial court's erroneous assessment of the undisputed facts and their application to controlling law. Instead, we find that the undisputed facts show that FIGA did not deny Miller's claim by affirmative action, and absent some evidence that FIGA denied Miller's claim by affirmative action, Miller is not entitled to attorney's fees under section 631.70. Accordingly, there is ample basis in the record to affirm the trial court's denial of fees even though it based its denial on two statutory misinterpretations. To hold otherwise would essentially allow a trial court to rewrite a statute, by default, and ironically, thereby impose a result contrary to its intent.

For these reasons, and in accord with the tipsy coachman doctrine, we find that there was no reversible error in the trial court's denial of Miller's motion to tax attorney's fees.

Affirmed.


SILBERMAN and LUCAS, JJ., Concur.