766 So.2d 1234 (2000)
STATE of Florida, Appellant,
v.
Robert GANDY, Appellee.
No. 1D99-3951.
District Court of Appeal of Florida, First District.
September 25, 2000.
Robert A. Butterworth, Attorney General; Bart Schneider, Assistant Attorney General, Tallahassee, for Appellant.
Louis O. Frost, Jr., Public Defender; Courtenay H. Miller, Assistant Public Defender, Fernandina Beach, for Appellee.
*1235 PER CURIAM.
The state appeals from the trial court's order granting appellee Gandy's motion to suppress in which the lower court found that the officers lacked reasonable suspicion to conduct an investigatory stop. We reverse.
Appellee Gandy was charged with possession of cocaine, and he filed a motion to suppress the evidence, which the trial court granted. The state filed the instant appeal arguing that the lower court's conclusion of law, that the officers lacked reasonable suspicion to effect the investigatory stop, is inconsistent with the findings of fact. The facts in the case are undisputed. Sgt. Williams, a nine year veteran with the Nassau County Sheriff's Office, including two years as a narcotics detective, and another detective were members of a special narcotics unit. For one to two months, the officers conducted a surveillance of a specific trailer in Yulee, Florida, because of reports of crack cocaine being sold in front of the residence. During that time, the officers observed a specific pattern for drug purchases at this specific location. A car would pull into the circular driveway and flash its lights or proceed slowly or stop. Usually, a black male then would emerge from a nearby wooded area, walk to the driver's side of the vehicle, and engage in a drug transaction. During the surveillance of the location, the officers arrested approximately ten to fifteen people based on these observations.
On February 25, 1999, at 11:44 p.m., the officers observed this pattern repeated once again. A vehicle containing two white males pulled into the driveway of the trailer and parked. An unknown black male immediately emerged from a wooded area and walked to the driver's side window of the vehicle. The officers did not see anything exchanged, but at this point, they drove up and parked their unmarked vehicle near, but not blocking the path of, the other vehicle. Both officers, wearing shirts with identifiable sheriffs office markings and holstered guns, exited their vehicle. As they neared the other vehicle, the black male fled back into the nearby woods, but neither officer pursued him. Instead Sgt. Williams approached the driver's side of the vehicle, identified himself as a sheriffs deputy, and asked the appellee Gandy, the driver, what he was doing at the residence. Gandy responded that he was there to visit a friend, but upon further questioning, appellee was unable to provide a name for his friend. Sgt. Williams requested identification and Gandy offered his driver's license. The deputy then returned to his vehicle, where he ran a warrant search and called for a canine to come do a free air sniff. Neither officer told appellee that he was free to leave, but within two minutes another deputy arrived with the dog. The officers then asked the defendant and his passenger to exit the vehicle while the dog was walked around the car. The state stipulated that at this point the officers effected an investigatory stop. The canine alerted to the vehicle, and the officers recovered cocaine from the front seat area of the car.
A trial court's ruling on a motion to suppress comes to us clothed with a presumption of correctness, and we must interpret the evidence and reasonable inferences and deductions in a manner most favorable to sustaining that ruling. Johnson v. State, 608 So.2d 4, 9 (Fla.1992), cert. denied, 508 U.S. 919, 113 S.Ct. 2366, 124 L.Ed.2d 273 (1993). In this case, the facts are undisputed and supported by competent substantial evidence. See Caso v. State, 524 So.2d 422 (Fla.), cert. denied, 488 U.S. 870, 109 S.Ct. 178, 102 L.Ed.2d 147 (1988). Accordingly, our review of the trial court's application of the law to the facts is de novo. See United States v. Harris, 928 F.2d 1113, 1115-16 (11th Cir. 1991). In addition, we are constitutionally required to interpret search and seizure *1236 issues in conformity with the Fourth Amendment of the United States as interpreted by the United States Supreme Court. See Fla. Const. art. I, § 12; Perez v. State, 620 So.2d 1256 (Fla.1993); Bernie v. State, 524 So.2d 988 (Fla.1988).
The question before us is whether, at the time the officers asked Gandy and his passenger to exit their vehicle, the officers had a well founded reasonable suspicion that Gandy committed, was committing, or was about to commit a crime. § 901.151, Fla. Stat.; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "A `founded suspicion' is a suspicion which has some factual foundation in the circumstances observed by the officer, when those circumstances are interpreted in the light of the officer's knowledge." Hunter v. State, 660 So.2d 244, 249 (Fla. 1995), cert. denied, 516 U.S. 1128, 116 S.Ct. 946, 133 L.Ed.2d 871 (1996). Whether an officer has a founded suspicion of criminal activity justifying a seizure is determined by the "totality of the circumstances." In this case, we conclude that the totality of the facts and circumstances presented above combined to provide the officers with reasonable suspicion. These facts include the narcotics enforcement experience of the officers, the lengthy surveillance of the particular residence, the observation of a specific pattern of activity for drug sales, the fifteen prior arrests made as a result of these observations, the time of day (11:44 p.m.), the unusual aspect of the pattern in that the "seller" always emerged from the woods and not from the residence to which the driveway belonged, and the fact that appellee Gandy lied to the officers about his reason for parking in the driveway of this residence. In addition, contrary to the trial court's determination, the flight of the black male into the woods as the uniformed officers approached was a factor to be considered in the totality of the circumstances.
This case is analogous to Saadi v. State, 658 So.2d 112, 113 (Fla. 2d DCA 1995), in which two police officers maintained surveillance, three times a week for a month, of a specific location known for drug activity. During that time they observed a specific patternvehicles would drive up to a specific residence, black males would come outside and approach the drivers or the drivers would exit their vehicles, items would be handed back and forth, and the vehicle would leave. Three or four previous arrests had resulted from the observation of this pattern, and the arrestees had all been found with cocaine. During their surveillance on a subsequent night at 2:50 a.m., the officers observed a car pull up to the residence, and several black males came out of the house and approached the vehicle. Saadi exited the car, and a black male engaged in a short conversation with him, followed shortly by Saadi peering down into the man's cupped hand. Saadi then reached into his front right pocket, but because the two men then walked behind a car, the officer did not see an exchange. After Saadi drove away, the police stopped and arrested him. The appellate court held that the facts and circumstances of the case, including the surveillance of the house, observance of other drug activity, the actions of Saadi, as well as inferences drawn from those actions, combined to give the officer a well-founded suspicion that appellant had engaged in the criminal act of purchasing drugs. See id. at 113. In Saadi as in the instant case the experience of the officers, surveillance of a specific location, observation of a specific pattern for drug sales, previous arrests based on the surveillance, and observation of the defendant engaged in the specific pattern were all important factors that supported a finding of reasonable suspicion. Just as in Saadi, the officers in this case did not actually observe a transfer between the black male and Gandy, but the observation of an actual exchange of money or contraband is not required. See Hills v. State, 629 So.2d 152, 155 (Fla. 1st DCA 1993), review denied, 639 So.2d 981 *1237 (Fla.1994); Burnette v. State, 658 So.2d 1170, 1171 (Fla. 2d DCA 1995).
Our determination that the officers had reasonable suspicion is further strengthened by additional factors not present in Saadi. First, during the consensual encounter with the officer, Gandy blatantly lied when questioned about the reason for his presence at the residence. See Myles v. State, 374 So.2d 83, 84 (Fla. 3d DCA 1979) (affirming officers had reasonable suspicion to stop defendant who appeared nervous and agitated in Miami airport ticket line and lied to ticket agent that he was in military and needed to board plane but was unable to produce military identification). See also Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000) ("[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion."). In addition, the drug sale pattern in this case included the unusual circumstance that the seller always emerged from the woods, not the residence.
Finally, we address the trial court's conclusion that the flight of the black male from his conversation with Gandy upon his sighting of the uniformed officers was not a relevant factor in the totality of the circumstances. In Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), the Supreme Court addressed the relevance of flight in a reasonable suspicion determination. The defendant in that case was holding an opaque bag and standing next to a building in an area known for heavy narcotics trafficking when the officers approached in the last car of a four-car caravan converging on the area to investigate drug transactions. Wardlow looked in the direction of the officers and fled, and the officers pursued him in their vehicle. Upon apprehending Wardlow, the officers discovered a gun in Wardlow's bag. The Supreme Court cited Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and found the fact that the stop occurred in a "high crime area" was relevant and that the defendant's "unprovoked flight" was as well, recognizing that "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." Id., 120 S.Ct. at 676. In determining that the officers had reasonable suspicion to effect the stop, the Court stated that "[h]eadlong flight wherever it occurs is the consummate act of evasion" and while such "is not necessarily indicative of wrongdoing, ... it is certainly suggestive of such." Id.
Although Wardlow addresses the determination of reasonable suspicion with regard to the flight of the person detained, the state contends that in this case the flight of the man into the woods should be deemed as a fact supporting the officers' reasonable suspicion with regard to Gandy. The state argues that under Wardlow the officers in this case had reasonable suspicion to believe that the fleeing black male was engaged in a drug deal. Accordingly, the man's flight supports the reasonable suspicion that Gandy too was engaged in a drug deal as purchaser. We agree that the man's flight is pertinent here. Standing alone, one person's flight may not be relevant to support a reasonable suspicion determination as to someone who remained behind. In this case, however, the man's flight into the woods is relevant to support the officer's reasonable suspicion because the officers observed a regular pattern in which the person who emerged from the woods near the driveway sold drugs to the person in a vehicle. As we have outlined above, such flight is not the sole basis for the officers' reasonable suspicion to conduct the investigatory detention in this case. It is, however, a factor to be considered in the totality of the circumstances. See Copeland v. State, 756 So.2d 180 (Fla. 2d DCA 2000).
For the reasons discussed in the foregoing opinion, we reverse the trial court's order granting appellee Gandy's motion to *1238 suppress and remand for further proceedings.
BARFIELD, C.J., MINER and PADOVANO, JJ., CONCUR.