GROSS, J.
 

 Does an officer have reasonable suspicion to effect a traffic stop when he conducts a computer check of a car’s tag and learns that the tag is registered to the same make of car, but to one of a different color? We agree with courts in Indiana and Georgia and hold that under these circumstances an officer may lawfully make a traffic stop under the Fourth Amendment of the United States Constitution.
 

 The facts leading up to the traffic stop in this case are undisputed. At about 1:00 a.m. on a Friday night, Deputy Jason Pickering observed a black two-door Honda. He learned that the Honda’s color did not match the color reported on a law enforcement database, which indicated that the Honda should have been light-blue. Deputy Pickering activated his blue lights and stopped the Honda. The deputy explained his reason for making the stop. “[Tjhat struck me as odd,” the deputy stated. “I didn’t know if that tag might not belong to that car or it could have been possibly a stolen vehicle I didn’t know.”
 

 The only occupant in the vehicle was Joshua Aders. He gave Deputy Pickering his vehicle registration and insurance information, which also described the car as light blue. However, the VIN on the car and registration matched. Aders told
 
 *370
 
 Deputy Pickering that he had spray painted the car when he bought it but had not yet changed the color on the registration. Deputy Pickering handed back Aders’ license, registration, and insurance information, gave him a warning, and told him he was free to leave. Before Aders left the scene, however, the deputy requested his consent to search the car. Aders consented and volunteered that he had drug paraphernalia in the car’s center console. The deputy’s search also uncovered marijuana and pills.
 
 [1]
 

 In the circuit court, Aders challenged the traffic stop, arguing that the deputy did not have a reasonable, articulable suspicion to justify an investigatory stop under
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The circuit court ruled that the deputy was justified in making the stop to determine if the license plate was attached to the correct vehicle; the court explained that
 

 [i]t is reasonable for a law enforcement officer to conclude that a registration plate affixed to a vehicle which differs in color from the vehicle described on the registration information from the Florida Department of Highway Safety, Motor Vehicles Division, even if the make and Model are the same or similar, warrants further investigation.
 

 Given the undisputed facts, this case presents a legal issue — the constitutionality of a traffic stop — so the standard of review is
 
 de novo.
 

 The Fourth Amendment guarantees “[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.” U.S. Const, amend. IV. “Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a ‘seizure’ of ‘persons’ within the meaning of this provision.”
 
 Whren v. United States,
 
 517 U.S. 806, 809-10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (citations omitted). Accordingly, the stop must be reasonable for it to comport with the Fourth Amendment.
 
 Id.
 
 at 810.
 

 “[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.”
 
 Id.
 
 (citing
 
 Delaware v. Prouse,
 
 440 U.S. 648, 659, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979);
 
 Pennsylvania v. Mimms,
 
 434 U.S. 106, 109, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977)). “Probable cause exists where the totality of the facts known to the officer at the time would cause a reasonable person to believe that an offense has been committed.”
 
 State v. Hebert,
 
 8 So.3d 393, 395 (Fla. 4th DCA 2009) (citing
 
 State v. Walker,
 
 991 So.2d 928, 931 (Fla. 2d DCA 2008)). At the very least, an officer must have an articulable and reasonable suspicion that the driver violated, is violating, or is about to violate a traffic law.
 
 See United States v. Arvizu,
 
 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002);
 
 Prouse,
 
 440 U.S. at 654 & n. 11, 661, 663, 99 S.Ct. 1391.
 
 [2]
 

 
 *371
 
 In arguing that the traffic stop was invalid, Aders contends there could be no reasonable suspicion he violated state law if Deputy Pickering’s sole reason was that the car’s color did not match the color listed in state records, especially, he asserts, where there is no legal requirement that a driver notify the state of color changes. While the statutory and regulatory framework bears out the truth of Aders’ assertion, we nonetheless agree with those courts from other states holding that a color discrepancy between a car and its computer registration creates sufficient reasonable suspicion to justify a traffic stop for further investigation.
 

 Subsection 320.02(1), Florida Statutes (2010), requires an owner to register a vehicle that is “operated or driven on the roads of this state” and the owner “shall apply to the department” for registration “on a form prescribed by the department.” Florida Administrative Code Rule 15-1.016 lists forms utilized by the Division of Motor Vehicles; there is no form for an owner to report a new paint job to the Department.
 
 [3]
 
 At least one form includes a space for the color as part of the information about a vehicle, but the purpose of the form is not for reporting a change in col- or.
 
 [4]
 
 Resort to the Florida Vehicle Registration that every driver must carry suggests that a registration may be renewed without having to note a change of color of a vehicle. The state has not and could not cite to a regulation or statute that Aders violated by failing to notify the department that he had painted his blue car black.
 

 But, Deputy Pickering suspected Aders of improperly transferring a license plate, which is a second-degree misdemeanor under section 320.261, Florida Statutes (2010).
 
 [5]
 
 A color discrepancy is enough to create a reasonable suspicion in the mind of a law enforcement officer of the violation of this criminal law. For example, in
 
 Smith v. State,
 
 a trooper “initiated [a] traffic stop because a computer check on the vehicle’s license plate revealed that the plate was registered to a yellow Oldsmobile rather than a blue and white one.” 713 N.E.2d 338, 341 (Ind.Ct.App.1999). After the stop, the trooper discovered that the car belonged to the passenger, “who had painted it a different color, which explained the apparently mismatched license plate.”
 
 Id.
 
 The Indiana court held that the investigatory stop of the vehicle “was valid and supported by reasonable suspicion.”
 
 Id.
 
 at 342. Similarly, in
 
 Andrews v. State,
 
 the court found reasonable suspicion to exist where an officer observed a greenish-gold car that a computer check revealed to be registered as silver in color; the court concluded that it was reasonable for the officer “to infer that the license plate may have been switched from another car.” 289 Ga.App. 679, 658 S.E.2d 126, 127-28 (2008).
 
 [6]
 
 Applying
 
 Smith
 
 and
 
 An
 
 
 *372
 

 drews
 
 to this case, we affirm the circuit court’s denial of the motion to suppress.
 

 We acknowledge the case upon which Aders relies,
 
 Commonwealth v. Mason,
 
 2010 WL 768721 (Va.Ct.App. Mar.9, 2010), which on similar facts held that a traffic stop violated the Fourth Amendment. The court in that case appeared to focus on the deputy’s subjective intent in making the stop, rather than on an objective evaluation of the facts. “Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis,” so whether a stop is a pretext is irrelevant as long as it is otherwise justified.
 
 Whren,
 
 517 U.S. at 811-13, 116 S.Ct. 1769.
 

 Affirmed.
 

 STEVENSON and GERBER, JJ„ concur.
 

 [1]
 

 . In the trial court, Aders did not challenge his consent to the search.
 

 [2]
 

 .
 
 See also United States v. Harris,
 
 526 F.3d 1334, 1337-38 (11th Cir.2008) ("A traffic stop, however, is constitutional if it is either based upon probable cause to believe a traffic violation has occurred or justified by reasonable suspicion in accordance with
 
 Terry [v. Ohio],
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 [(1968)].” (citation omitted));
 
 United States v. Botero-Ospina,
 
 71 F.3d 783, 787 (10th Cir.1995) ("[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring.” (footnote omitted)) (en banc).
 

 [3]
 

 . For example, the HSMV 82100 form is an affidavit for "Change/Alteration” of body, but it refers to the body of the vehicle and not its color.
 
 See
 
 Fla. Dep’t of Highway Safety & Motor Vehicles (DHSMV), Affidavit for Change/Alteration of Body, HSMV 82100 (Rev.5/01), http://www.flhsmv.gov/dmv/forms/ BTR/82100.pdf (last visited July 19, 2011).
 

 [4]
 

 .
 
 See, e.g.,
 
 DHSMV, Application for Replacement License Plate, Validation Decal or Parking Permit, HSMV 83146 (Rev.06/11) S, http://www.flhsmv.gov/dmv/forms/BTR/83146. pdf (last visited July 19, 2011).
 

 [5]
 

 . In pertinent part, that statute provides:
 

 Any person who knowingly attaches to any motor vehicle ... any registration license plate, ... which plate ... was not issued and assigned or lawfully transferred to such vehicle, is guilty of a misdemeanor of the second degree....
 

 § 320.261.
 

 [6]
 

 . This case is distinguishable from
 
 United States v. Clarke,
 
 881 F.Supp. 115, 116 (D.Del.1995), where there were facts other than the color discrepancy that supported the traffic stop; for example, the car was seen in a high
 
 *372
 
 crime area that had "a large number of stolen vehicles,” the tag was from a state with high incidence of stolen vehicles, and the car was a model that was "commonly stolen.”