ON MOTION FOR REHEARING

WOLF, J.
Appellee’s motion for rehearing filed on January 9, 2013, is denied. The court’s opinion filed December 21, 2012, is withdrawn, and the following opinion is substituted for clarification.
Appellant, Kerick Van Teamer, seeks review of the trial court’s denial of his motion to suppress and his subsequent judgment and sentence for felony drug trafficking. We reverse the trial court’s denial of appellant’s motion to suppress and certify conflict with the Fourth District’s opinion Aders v. State, 67 So.3d 368 (Fla. 4th DCA 2011). Because we reverse, it is unnecessary to reach appellant’s other issues raised on appeal.
On June 22, 2010, at about 3:00 p.m., an Escambia County Deputy Sheriff observed appellant driving a bright green Chevy. The deputy “ran” the license plate tag number through the Department of Highway Safety and Motor Vehicles (DHSMV). Upon learning that the plate number was registered to a blue Chevy, the deputy pulled the vehicle over based only on the color inconsistency. Upon interviewing the occupants, the deputy learned that the vehicle had recently been painted, thus explaining the inconsistency. During the stop, however, the deputy smelled marijuana emanating from the car and conducted a search of appellant, his passenger, and the vehicle. Marijuana and crack cocaine were recovered from the vehicle, and about $1,100 in cash was recovered from appellant. Appellant was charged with trafficking in cocaine (between 28-200 grams), possession of marijuana (less than 20 grams), and possession of drug paraphernalia, scales.
Appellant filed a dispositive motion to suppress the results of the stop as an unconstitutional search, arguing that the color inconsistency alone was an insufficient basis to justify an investigatory stop. During the hearing on the motion, the deputy explained that the color inconsistency piqued his interest. He acknowledged that, in his training and experience, he encountered individuals who would switch vehicle plates, and he could not confirm whether the vehicle identification number matched the plates without pulling over the vehicle.
On cross examination, the deputy agreed that the only thing that was out of the ordinary was the inconsistency of the vehicle color from the registration. He acknowledged he observed no other traffic violation, suspicious or furtive behavior, nor was he aware of any reports of stolen vehicles or swapped plates in the area.
The trial court denied the motion and in a later statement of proceedings explained that “because the registration was not consistent with the color of the vehicle,” the officer made an investigatory stop. The court determined that the officer “had a legal right to conduct an investigatory stop when a registration search of the automobile license tag reflected a different color than the observed color of the vehicle.”
*666 Appellant was subsequently tried before a jury, convicted of the three counts, and sentenced to six years’ imprisonment for the trafficking count and time served for the other misdemeanor counts.
On appeal, appellant argues the mere fact that the color of a vehicle does not match the color indicated on motor vehicle registration records does not establish a reasonable, articulable suspicion of criminal activity to support an investigatory stop of a vehicle. He further argues this is particularly true in Florida where there is no legal requirement that a vehicle owner inform the DHSMV of a change in the color of the vehicle. The State argues the color inconsistency, despite being the result of innocent activity, represents the potential illegal activity of making a false application on vehicle registration, a violation of sections 820.06 and 320.061, Florida Statutes. Thus, the State argues this is a sufficient basis for an investigatory stop, as determined by the Fourth District in Aders v. State, 67 So.3d 868 (Fla. 4th DCA 2011).
The appropriate standard of review is summarized in State v. Gandy, 766 So.2d 1234, 1235-36 (Fla. 1st DCA 2000):
A trial court’s ruling on a motion to suppress comes to us clothed with a presumption of correctness, and we must interpret the evidence and reasonable inferences and deductions in a manner most favorable to sustaining that ruling. Johnson v. State, 608 So.2d 4, 9 (Fla.1992), cert. denied, 508 U.S. 919, 113 S.Ct. 2366, 124 L.Ed.2d 273 (1993). In this case, the facts are undisputed and supported by competent substantial evidence. See Caso v. State, 524 So.2d 422 (Fla.), cert. denied, 488 U.S. 870, 109 S.Ct. 178, 102 L.Ed.2d 147 (1988). Accordingly, our review of the trial court’s application of the law to the facts is de novo. See United States v. Harris, 928 F.2d 1113, 1115-16 (11th Cir.1991). In addition, we are constitutionally required to interpret search and seizure issues in conformity with the Fourth Amendment of the United States as interpreted by the United States Supreme Court. See Fla. Const. art. I, § 12; Perez v. State, 620 So.2d 1256 (Fla.1993); Bernie v. State, 524 So.2d 988 (Fla.1988).
The Fourth DCA summarized the law on traffic stops as follows:
The Fourth Amendment guarantees “[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.” U.S. Const. amend. IV. “Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a ‘seizure’ of ‘persons’ within the meaning of this provision.” Whren v. United States, 517 U.S. 806, 809-10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (citations omitted). Accordingly, the stop must be reasonable for it to comport with the Fourth Amendment. Id. at 810 [116 S.Ct. 1769].
“[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.” Id. (citing Delaware v. Prouse, 440 U.S. 648, 659, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); Pennsylvania v. Mimms, 434 U.S. 106, 109, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977)). “Probable cause exists where the totality of the facts known to the officer at the time would cause a reasonable person to believe that an offense has been committed.” State v. Hebert, 8 So.3d 393, 395 (Fla. 4th DCA 2009) (citing State v. Walker, 991 So.2d 928, 931 (Fla. 2d DCA 2008)). At the very least, an officer must have an articulable and reasonable suspicion that the driver violated, is vio *667 lating, or is about to violate a traffic law. See United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); Prouse, 440 U.S. at 654 & n. 11, 661, 663, 99 S.Ct. 1391.
Aders, 67 So.3d at 370 (Fla. 4th DCA 2011). In making a reasonable suspicion inquiry, “ ‘the relevant inquiry is not whether particular conduct is ‘innocent’ or ‘guilty,’ but the degree of suspicion that attaches to particular types of noncriminal acts.’” U.S. v. Sokolow, 490 U.S. 1, 10, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (quoting Illinois v. Gates, 462 U.S. 213, at 243-244, n. 13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). However, an investigatory stop must be predicated on something more than an “inchoate and unparticularized suspicion or ‘hunch.’ ” Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
As a preliminary matter, we acknowledge that any discrepancy between a vehicle’s plates and the registration may legitimately raise a concern that the vehicle is stolen or the plates were swapped from another vehicle. We must, however, weigh that level of concern against a citizen’s right under the Fourth Amendment to travel on the roads free from governmental intrusions. See State v. Diaz, 850 So.2d 435, 439 (Fla.2003) (“The real test is one of reasonableness, which involves balancing the interests of the State with those of the motorist.”). The question before this court, therefore, is whether an inconsistency in color alone is a sufficient basis to support an officer’s articulable and reasonable suspicion that a particular person is committing a crime in the absence of any other suspicious behavior or circumstances to allow a temporary seizure of a person for an investigatory stop.
Changing the color of a vehicle is not illegal, and the State does not require an owner to report the change in color to the DHSMV. See Aders, 67 So.3d at 371. The question then is what degree of suspicion attaches to this particular noncriminal act? In Aders and the cases cited therein, a few courts have concluded that the color inconsistency alone created enough suspicion to justify an investigatory stop.
In Aders, the officer testified that after running the tags and discovering a color discrepancy, he decided to stop the vehicle. The circuit court concluded that the officer was justified in the stop because:
[i]t is reasonable for a law enforcement officer to conclude that a registration plate affixed to a vehicle which differs in color from the vehicle described on the registration information from the Florida Department of Highway Safety, Motor Vehicles Division, even if the make and Model are the same or similar, warrants further investigation.
Id. at 371. The Fourth District affirmed the circuit court on the basis of Smith v. State, 713 N.E.2d 338, 341 (Ind.Ct.App.1999) and Andrews v. State, 289 Ga.App. 679, 658 S.E.2d 126, 127-28 (2008), both cases which found that a color discrepancy in the registration was enough to create an articulable reasonable suspicion that the license plate may have been switched from another vehicle. In Smith, however, the vehicle matched the description of another vehicle known to be involved in gang activity. Smith, 713 N.E.2d at 341 n. 3. The Smith court also failed to acknowledge that Indiana law also does not require an owner to report a change in vehicle color. See U.S. v. Uribe, No. 2:10-cr-17-JMS-CMM, 2011 WL 5088646, at *3 n. 4 (S.D.Ind. Oct. 25, 2011) (declining to follow Smith based on this point). It also appears that no other court besides Aders has relied on either Smith or Andrews for the cited proposition.
In one unpublished opinion from Iowa, a court found that a registration color dis *668 crepancy was sufficient to stop a motorcycle because Iowa vehicle registration law does require an accurate description of the vehicle. State v. Thiel, Nos. 01-0029, 1-486, 2001 WL 1448490 (Ct.App.Iowa Nov. 16, 2001).
Typically, where registration color discrepancy is at issue, it is one of several factors that support a reasonable suspicion. See U.S. v. Clarke, 881 F.Supp. 115 (D.Del.1995) (color discrepancy, out-of-state plates, presence in a high crime area, and inconsistency of driver gender combined with the officer’s knowledge that the model was commonly stolen were enough to support an articulable and reasonable suspicion that the driver was in violation of the law); U.S. v. Cooper, 431 Fed.Appx. 399, 402 (6th Cir.2011) (officers had a reasonable suspicion that a vehicle may have been stolen based on registration color discrepancy, the vehicle’s location in an area known for car theft, and officer’s testimony that thieves will purposely put a plate of the same make and model on a stolen vehicle); State v. Paggett, 684 So.2d 1072 (La.Ct.App.1996) (speeding and color discrepancy sufficient for reasonable suspicion of traffic regulation violation); State v. Gonzalez, No. A05-2151, 2007 WL 46029 (Minn.Ct.App. Jan. 9, 2007) (in light of officer’s training and experience, color discrepancy, condition of truck’s interior, deceptive responses, and absence of owner together gave officer reasonable suspicion of drug transportation). In U.S. v. Caro, the court disapproved of the extent of the officer’s VIN search into the passenger compartment after stopping the vehicle for a window tint violation, but acknowledged that the registration color discrepancy in addition to the driver’s inability to recall the owner’s last name was sufficient for the officer to take appropriate steps to ascertain the legal status of the vehicle. 248 F.3d 1240, 1246 (10th Cir.2001). In U.S. v. Rodgers, while reversing the district court’s denial of a suppression motion on other grounds, the court noted that a color discrepancy coupled with a high-crime location provided a “thin basis” for a reasonable suspicion that the car was stolen, in light of the fact that local laws did not require registration to be updated with color changes. 656 F.3d 1023, 1027 (9th Cir.2011).
Other than Aders, Thiel, and Andrews, our review of state and federal caselaw reveals few other cases where the courts considered color discrepancy as the sole factor to support a reasonable suspicion. In Uribe, a federal district court granted a motion to suppress when the evidence on record revealed that the officer had stopped the vehicle solely for a color discrepancy. Given the “totality of the circumstances,” i.e., just one circumstance, there was nothing that would reasonably lead an officer to suspect the particular vehicle may be stolen, and state law did not require an owner to update the registration with a color change. 2011 WL 4538407 at *4. The Uribe court noted a decision from New Hampshire that found it could “not sanction traffic stops for those citizens who simply decide to paint their cars without some particularized suspicion of criminal wrongdoing such as, for example, the theft and subsequent repainting of a vehicle.” Id., quoting State v. O’Neill, 2007 WL 2227131 (N.H.Super.Ct.2007).
In Commonwealth v. Mason, a Virginia circuit court determined that because color disparity alone was not unlawful, “ ‘without some additional indicia of legal wrongdoing’” the facts did not provide a reasonable articulable suspicion that the vehicle or plate may be stolen. 78 Va. Cir. 474, *2 (Cir.Ct.2009) (quoting Moore v. Commonwealth, 49 Va.App. 294, 640 S.E.2d 531, 537 (2007) (Reinstated by 276 Va. 747, 668 S.E.2d 150 (2008))). That court concluded *669 that “Upholding a stop on these facts would permit law enforcement to make a random, suspicionless stop of any car with a color disparity on its registration. The Fourth Amendment does not afford the police such unbridled discretion.” Id. The Virginia Court of Appeals agreed with the circuit court that the officer’s belief that color discrepancies sometimes indicate a stolen vehicle was no more than a hunch in the absence of other circumstances. Commonwealth v. Mason, No. 1956-09-2, 2010 WL 768721 (Va.Ct.App. Mar. 9, 2010).
The somewhat analogous cases involving investigations of “temporary tags” provide us some guidance as to the reasonableness of this particular stop. Several cases have reviewed instances where officers stopped vehicles solely because the vehicle had a temporary license plate tag. While an officer may be aware that people driving with an apparently legal temporary tag may be violating the law by driving on an expired permit or even driving a stolen vehicle, the officer is required to have a “particularized and objective basis for suspecting the particular person stopped of criminal activity.” U.S. v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Otherwise the officer has only a mere inclination or hunch that a tag may be expired or a car stolen. See Bius v. State, 254 Ga.App. 634, 563 S.E.2d 527 (2002) (stopping a car with a temporary tag solely to ascertain whether the driver is complying with vehicle registration laws is not authorized); Berry v. State, 248 Ga.App. 874, 547 S.E.2d 664 (2001) (officer had a mere inclination or hunch that any car with a temporary tag might be stolen); People v. Hernandez, 45 Cal.4th 295, 86 Cal.Rptr.3d 105, 196 P.3d 806 (2008) (An officer who sees a vehicle displaying a temporary tag may not stop the vehicle simply because he believes that such permits are often forged or otherwise invalid; to support a stop the officer must have a reasonable suspicion that the particular permit is invalid) (citing U.S. v. Wilson, 205 F.3d 720 (4th Cir.2000); State v. Childs, 242 Neb. 426, 495 N.W.2d 475 (1993); State v. Aguilar, 141 N.M. 364, 155 P.3d 769 (2007); State v. Chatton, 11 Ohio St.3d 59, 463 N.E.2d 1237 (1984); State v. Butler, 343 S.C. 198, 539 S.E.2d 414 (2000); and State v. Lord, 297 Wis.2d 592, 723 N.W.2d 425 (2006)).
We acknowledge there is a lack of guidance for police officers in this state’s case-law concerning the stopping of a vehicle for innocent behavior on the part of the driver. In State v. Diaz, a case involving a vehicle stop based on an officer’s inability to read the state-issued handwritten expiration date of a temporary tag although the tag appeared to be legally displayed, three justices would have ruled the initial stop illegal and the author of the majority opinion expressed doubt as to the legitimacy of the stop. 850 So.2d 435, 437, 440 (Fla.2003) (“[Djespite the fact that the driver had no control over the legibility of the expiration date, we assume for the purposes of this case that the initial stop by the deputy sheriff was legitimate, albeit based upon a barely justifiable purpose.”).
In Florida, it is legal to repaint a vehicle without reporting the change, creating an inconsistency between the vehicle registration and the vehicle.[1] See Aders, 67 So.3d at 371. While an officer may suspect that people driving a vehicle of an inconsistent color may be violating the law by driving with a swapped tag or even driving a stolen vehicle, the officer is still required to have a “particularized and objective basis for suspecting the particular *670 person stopped of criminal activity.” Cortez, 449 U.S. at 417-18, 101 S.Ct. 690. If we accept the State’s argument, every person who changes the color of their vehicle is continually subject to an investigatory stop so long as the color inconsistency persists, regardless of any other circumstances.[2] The record does not contain any data regarding the prevalence of repainted vehicles registered in the State, but we are hesitant to license an investigatory stop of every person driving a vehicle with an inconsistent color. In the absence of other suspicious behaviors or circumstances, the decision of which inconsistent vehicles to stop would be left wholly to the discretion of the officer. Persons driving on public roads have a right to not have “their travel and privacy interfered with at the unbridled discretion of police officers.” Delaware v. Prouse, 440 U.S. 648, 663, 99 S.Ct. 1891, 59 L.Ed.2d 660 (1979).
We cannot agree with the Aders court that a color discrepancy alone warrants an investigatory stop and, therefore, certify conflict with the Fourth District’s opinion in Aders v. State, 67 So.3d 368 (Fla. 4th DCA 2011). The final judgment and sentence are reversed, and we remand to the trial court for appellant to be discharged.
REVERSED and REMANDED.
THOMAS and CLARK, JJ„ concur.

. It is for the Legislature to determine whether inconsistent vehicle colors are sufficiently problematic so as to require owners to report a change in vehicle color.

. We also reject the State’s post hoc rationalization that color inconsistency may indicate the owner made a false application on the vehicle registration in violation of sections 320.06 and 320.061, Florida Statutes. There is nothing in the record to explain why an owner would make such a false application, particularly given the more probable innocent explanation.