IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

STATE OF FLORIDA ,

    Appellant,

v.

RICKY ALPHONSO RAND,

    Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D15-335

Opinion filed April 4, 2016.

An appeal from the Circuit Court for Duval County.
Angela Cox, Judge.

Pamela Jo Bondi, Attorney General, Matthew Pavese, Assistant Attorney General,
for Appellant.

Janet E. Johnson and Andrew B. Greenlee of Andrew B. Greenlee, P.A., Tallahassee,
for Appellee.

KELSEY, J.

The State appeals an order granting Appellee's motion to suppress evidence

of a firearm that a Duval County School Police officer found Appellee carrying on

the grounds of a Jacksonville middle school at 2:00 a.m. The officer arrested

Appellee for trespass, and found the gun in Appellee's jacket pocket upon searching

Appellee immediately following the arrest. Because we conclude that the officer had probable cause to arrest Appellee for trespass on school grounds, we reverse and remand for further proceedings.

**Florida's School Safety Laws.**

Florida protects its school grounds by creating school safety zones "in, on, or within 500 feet of any real property owned by or leased to any public or private [school]." § 810.0975(1), Fla. Stat. (2014). Criminal trespass occurs when someone is on school grounds without "legitimate business on the campus or any other authorization, license, or invitation to enter or remain upon school property." § 810.097(1)(a), Fla. Stat. (2014). Any law enforcement officer may "arrest either on or off the premises and without warrant any person the officer has probable cause for believing has committed the offense of trespass upon the grounds of a school facility." § 810.097(4), Fla. Stat. (2014).

Every school principal is required to notify the appropriate law enforcement agency to prohibit people from loitering in the school safety zone, except for those with legitimate business, authorization, or license. See § 810.0975(2)(a), Fla. Stat. (2014). If no law enforcement officer is on site, a school's chief administrative officer or designated employee having probable cause to believe that a person is trespassing on school grounds is authorized to take into custody and detain such person "in a reasonable manner for a reasonable length of time" while awaiting

2

arrival of a law enforcement officer. § 810.097(3), Fla. Stat. (2014). It is a third-degree felony for a person trespassing on school property to possess a weapon or firearm on the property. § 810.095, Fla. Stat. (2014).

**Appellee's Presence On School Grounds At 2:00 a.m.**

The principal of the middle school at issue here had previously advised the Duval County School Police, and this officer specifically, that no people or vehicles were permitted to be on school property after hours at any time. The school is surrounded by a six-foot high chain link fence, and there are several "no trespassing" signs around the property. There is also a sign stating "No Track Access 7 A.M. to 4 P.M."

The arresting officer was assigned the duty of patrolling public school grounds at night. He testified that this school is in a high-crime area and that he has previously made numerous arrests for trespassing and burglary on school grounds in the area. The officer was on patrol at approximately 2:00 a.m. when he saw Appellee inside the fence, on the middle school grounds. It was undisputed that Appellee was not on the track when the officer first saw him. Appellee admitted that he was in an area of the school grounds between the track and school buildings, and facing a building, because it was necessary for him to cross that area to get to the track from the gate he entered. The officer was alone, and his backup was at least eight minutes away. He was concerned for his own safety. The night was cool but not cold, and Appellee

3

was wearing a dark, heavy jacket and dark sweat pants. Appellee was not doing anything exercise-related at that time. Given these facts and his understanding of the law at the time, the officer believed Appellee was trespassing and thought he might be on school property to commit burglary.

The officer shone a light on Appellee and called out to him. Appellee immediately started walking toward the officer. The officer testified that sometimes suspects do approach him rather than run away, such as when they do not think he is there to arrest them. The gate closest to the officer was locked, and he unlocked it. The officer did not know at that time that another gate on a different side of school grounds was open, nor was he aware of the sign prohibiting track access between 7:00 a.m. and 4:00 p.m. When Appellee got within earshot of the officer, he stated that he was just there to walk the track. As Appellee got closer, the officer asked him again what business he had for being on school property, and he repeated that he was there to walk the track. Appellee admitted that as he walked, he reached toward the front of his jacket—he said to keep it closed. The officer saw these movements and thought Appellee might be reaching for a gun.

Upon reaching Appellee, the officer handcuffed him, arrested him for trespassing, and asked if he had a weapon. The officer's search immediately revealed a firearm in a front pocket of Appellee's jacket. Appellee was charged with

4

trespassing on school grounds while carrying a weapon, and possession of a firearm by a convicted felon.

**The Motion to Suppress.**

Appellee moved to suppress the firearm recovered from the search, asserting that the arrest and search were without probable cause. Appellee admitted that he was a convicted felon, with "probably three" prior felony convictions. The trial court concluded the officer was credible in his belief that Appellee was trespassing, and the officer had a reasonable belief that Appellee may have been engaged in unlawful conduct. The court found that the officer had a reasonable basis to detain Appellee, and Appellee has not challenged this finding. The court nevertheless granted the motion to suppress on grounds that the officer failed to conduct an investigation prior to arresting Appellee and thus lacked probable cause.

**Probable Cause Analysis.**

Probable cause exists when an officer has reasonable grounds to believe that the defendant committed a crime. State v. Cuomo, 43 So. 3d 838, 841 (Fla. 1st DCA 2010) ("The existence of probable cause is not based on a formulaic determination, but rather on the probability of criminal activity."). We evaluate whether "the totality of the facts and circumstances within an officer's knowledge would cause a reasonable person to believe that an offense has been committed by the person being arrested." Hatcher v. State, 15 So. 3d 929, 931 (Fla. 1st DCA 2009); see also Dahl

v. Holley, 312 F.3d 1228, 1234 (11th Cir. 2002) (holding that "arresting officers, in deciding whether probable cause exists, are not required to sift through conflicting evidence or resolve issues of credibility, so long as the totality of the circumstances present a sufficient basis for believing that an offense has been committed."). We have held that an officer who observes a defendant committing the crime of trespass has probable cause to arrest the defendant and search him pursuant to the arrest. State v. Neely, 560 So. 2d 1230, 1231 (Fla. 1st DCA 1990).

This Court reviews the lower court's probable cause determination de novo, while it reviews the lower court's factual findings under the clearly erroneous standard. Jenkins v. State, 978 So. 2d 116, 122 (Fla. 2008) ("[D]eterminations of reasonable suspicion and probable cause should be reviewed de novo on appeal."); James v. State, 129 So. 3d 1206, 1208 (Fla. 1st DCA 2014). Two rules of law are dispositive. First, probable cause is judged objectively—from the officer's perspective. State v. Hankerson, 65 So. 3d 502, 506 (Fla. 2011); State v. Wimberly, 988 So. 2d 116, 119-20 (Fla. 5th DCA 2008). Second, probable cause is reviewed at the moment of arrest—the clock stops, time freezes, and nothing learned or occurring afterwards matters. Griffin v. State, 150 So. 3d 288, 291, 294 (Fla. 1st DCA 2014) (explaining that probable cause must be based solely on what is present and known at that point; "we stop the clock and observe the facts known to the officer") (citing Baptiste v. State, 995 So. 2d 285, 294 (Fla. 2008) ("[T]he

6

reasonableness of the officers' suspicion must be measured by the information that the officers knew *before* conducting the stop-and-frisk.")) (emphasis original).

Here, when the frame is frozen at the point of arrest, the scene demonstrates probable cause: an officer assigned to patrol a school, in a high-crime area, previously instructed that no one was to be on the grounds after hours; the officer having made prior arrests for trespassing and burglary under similar circumstances; a track on school grounds, within a fence, the gates of which the officer believed to be locked, bearing "No Trespassing" signs; and Appellee inside the fence at 2:00 a.m., facing a building some distance from the track, wearing dark, heavy clothing inappropriate for the temperature, and reaching toward his pockets as he walked.

Only those facts are relevant. Only those facts may be used to determine whether there were sufficient facts "to warrant a man of reasonable caution in the belief that an offense has been or is being committed." Hankerson, 65 So. 3d at 506. Reasonable mistakes of law and fact are permitted. See Heien v. North Carolina, 135 S. Ct. 530, 534, 540 (2014) (holding reasonable suspicion can be based on reasonable mistakes of law as well as reasonable mistakes of fact); Seago v. State, 768 So. 2d 498, 499-500 (Fla. 2d DCA 2000) (reversing trespass *conviction* because State did not prove lack of authorization, license, or invitation; *but affirming* the arrest for trespass, which only required probable cause). Probable cause is not a conviction, based on reasonable doubt, nor is it even a prima facie showing; it is

7

simply an "assessment of probabilities." Hankerson, 65 So. 3d at 506. In light of the relevant and undisputed facts, probable cause existed here.

We have defined "legitimate business" under the school trespass laws as "any purpose for being there which is connected with the operation of the school." E.W. v. State, 873 So. 2d 485, 487 (Fla. 1st DCA 2004). The officer could reasonably conclude that entering school grounds at 2:00 a.m. did not constitute "legitimate business," particularly in light of the principal's instructions to him that no one should be on school grounds after hours. If the officer had turned out to be wrong about such a conclusion, however, that would not defeat a finding that probable cause existed. See Heien, 135 S. Ct. at 534, 540 (explaining officer's reasonable mistake of law will not defeat probable cause).

Because the governing legal standards limit judicial review to the facts known to the arresting officer at the time of arrest, we reject the dissent's argument that the sign prohibiting access between 7:00 a.m. and 4:00 p.m. by negative implication authorized access at all other times, even in the middle of the night. The sign is not reasonably interpreted to invite public access on school grounds at all hours of the night, as a matter of common sense and in the context of Florida's system of laws protecting school properties. What the State's lawyer may have said about the sign at the suppression hearing long after the fact is neither binding nor even relevant to the pertinent question of the officer's knowledge and understanding at the time of

8

the arrest. The officer here testified that he was not aware of the sign at the time of this incident; and more to the point, the instructions of the school principal to this officer were directly contrary to such an interpretation of the sign, thus supporting our conclusion that the officer had probable cause to arrest Appellee under the circumstances.

Similarly, although the dissent reasons that anyone and everyone had permission to be on school grounds at any time because the school left one gate open and the signage only affirmatively prohibited public access during school hours, we reject that proposition as inconsistent with the statutes governing safety on school grounds. For purposes of probable cause analysis, it is dispositive that the record reflects that this officer did not know the gate was open and was not aware of the sign. In addition, the dissent's attempt to impute to this officer knowledge of what other school employees at another school had told *Appellee* (not this officer) is not supported by the record and is not a factor appropriately considered in the probable cause analysis. The pertinent legal test is what the officer knew about the facts and the law at the point of deciding to arrest Appellee. This officer was not inattentive to the only policy that mattered, which was that the principal of this particular school had told him no one was to be allowed on school grounds at night. The trial court found the officer credible, and there was no material dispute as to the officer's observations prior to arresting Appellee. Whether the officer might have allowed

9

someone on the track during daylight or evening hours is simply not relevant to whether he had probable cause to believe Appellee was trespassing on school grounds under these circumstances at 2:00 in the morning.

Appellee improperly equates the probable cause issue with the question of whether a trier of fact might find reasonable doubt for a conviction. Appellee maintains he had implied license to walk the track based on several factors such as the fact that one gate was open; he had been told he could walk the track of another school at night; and he was trying to lose weight by exercising at a time that worked for his schedule, a claim he supported with copies of various Facebook posts. Such after-the-arrest evidentiary arguments are inapplicable to the probable cause analysis and may not be considered for probable cause purposes. Griffin, 150 So. 3d at 291, 294 (explaining probable cause must be based solely on what is known at the point of arrest). The officer was under no obligation at that time to launch an investigation into the claims Appellee would later make in court. The officer's own safety would not permit such an investigation, and probable cause analysis does not require it. Nothing more is required than reasonable investigation under the circumstances. See City of Clearwater v. Williamson, 938 So. 2d 985, 990 (Fla. 2d DCA 2006) ("The officer does not have to take every conceivable step to eliminate the possibility of convicting an innocent person"; the officer must only conduct a "*reasonable* investigation") (emphasis original); see also A.S.P. v. State, 964 So. 2d

10

211 (Fla. 2d DCA 2007) (finding only that trespass investigation failed to provide probable cause).

Appellee is free to raise these arguments on remand on the merits of the trespassing charge. We do not pass on the propriety or strength of such arguments, however; that is a jury question. Applying the governing probable cause analysis to the legally relevant facts—those known to the arresting officer prior to the arrest—we find the trial court erred by concluding that probable cause did not exist and suppressing evidence of the firearm Appellee was carrying.

**<u>Conclusion</u>.**

Only one point in time matters to an appropriate probable cause analysis: the moment of arrest. Additional information gleaned afterwards is immaterial to the existence of probable cause. Under the circumstances presented here, the officer had probable cause, and the motion to suppress should have been denied.

Accordingly, we REVERSE the trial court's order granting Appellee's motion to suppress, and REMAND for entry of an order denying the motion to suppress, and for further proceedings.

SWANSON, J., CONCURS; OSTERHAUS, J., DISSENTS WITH OPINION.

OSTERHAUS, J., dissenting.

I would affirm the order suppressing the gun because the school district officer mistakenly arrested Mr. Rand for trespassing, and his mistake wasn't objectively reasonable as might have preserved probable cause and avoid application of the exclusionary rule. The school conspicuously invited the public to use its track before or after school hours, including at night. And other school district officers knew, understood, and conveyed to Mr. Rand an open-track policy, which further encouraged his nighttime track use. Under these circumstances, where the record demonstrates that one officer's mistake of law stemmed from his own disregardful inattention to a posted and broadly-known policy, and caused him to arrest, search, and seize the gun of a person with every right to be exercising at the track where the officer found him, we shouldn't reverse the trial court's decision. We should instead affirm the trial court's decision, and deny the state a "Fourth Amendment advantage through [its officer's] sloppy study of the laws he is duty-bound to enforce." Heien v. North Carolina, 135 S. Ct. 530, 539-40 (2014).

I.

Arrests are the most intrusive of Fourth Amendment seizures and are reasonable only if supported by probable cause, or where "the totality of the facts known to the officer at the time would cause a reasonable person to believe that an offense has been committed." Van Teamer v. State, 108 So. 3d 664, 666 (Fla. 1st

12

DCA 2013) (quotation omitted). The "exclusionary rule" dictates that trial courts must suppress physical evidence seized without probable cause, as the fruit of an unlawful arrest. This rule, according to the United States Supreme Court, is meant to "safeguard against future violations of Fourth Amendment rights through the rule's general deterrent effect." Arizona v. Evans, 514 U.S. 1, 10 (1995).

A.

In this case, a Duval County school district officer arrested Mr. Rand as he prepared to exercise on the neighborhood middle school's track a block from his house. The officer immediately arrested him, without any investigation, because he thought Mr. Rand was trespassing. But this was incorrect. The school had actually invited persons to use its track after school hours posting a big sign next to an open gate at the track. Nevertheless, the search incident to Mr. Rand's arrest turned up a gun in his jacket. And the State is now prepared to use the gun to prosecute Mr. Rand on felony gun-related charges.[1]

The officer in this case had no reasonable belief to think that Mr. Rand was trespassing at the school track when he arrested him (in his exercise clothes and with earbuds). The school had invited Mr. Rand to use the track and the officer should have known it. First, the officer—who testified that he'd patrolled the school for

---

[1] The State charged Mr. Rand with possession of a firearm by a convicted felon based on a marijuana possession conviction in Texas in 2003, see § 790.23, Fla. Stat., and for trespassing with a firearm, see § 810.095(1), Fla. Stat.

13

years and was "very familiar with this property"—neglected the school's conspicuous public invitation to use the track after school hours. A sign posted beside an open track gate declared in BIG, BOLD LETTERS: "NO TRACK ACCESS 7 AM to 4 PM." The officer conceded that the sign was "essentially an invitation to the public to enter that track on hours that do not conflict with [school]." But he claimed that he hadn't observed the sign before (even though the record indicated that the sign hung at more than one district school where he patrolled). The state attorney similarly acknowledged that "the sign posted on the fence admittedly would give someone license to use the track during those hours."

Second, the officer overlooked that the school regularly left the track gate by the sign open after hours. It gave the public easy access to the track, even while it locked other gates at the school. Adults from outside regularly exercised on the track before and after school hours, as pictures in the record showed. But the officer indicated that he wasn't aware that the school left the gate open at the track after school hours.

Third, the evidence showed that the officer's inattentiveness to the school's open-track policy contrasted sharply with his fellow officers' knowledge and enforcement of an open-track policy at schools with the inviting signs. Other officers confirmed to Mr. Rand that he could use the track after school hours: "They told me that as long as . . . the gate is unlocked then the public can have access to it." Mr.

14

Rand took their advice and had openly exercised for more than a year on school tracks. He regularly documented his workouts with pictures and Facebook postings that updated his miles, times, and other details of his workouts. In one Facebook posting entered into the record, made months before his arrest, he noted that his school track workout had to finish by 7 a.m., before school began. Another posting showed Mr. Rand shirtless and trumpeting that he'd lost 10 pounds. He exercised at night because of his odd schedule as a taxi driver, and because his fiancée managed the local Whataburger until 4 a.m. He had started exercising on his doctor's orders, because of blood pressure and weight issues, and a family history of heart disease.

Under these facts, with the officer conceding his ignorance of the school's posted open-track policy, his inattention to the school's practice of leaving the track gate open, and his unexplained disconnect with fellow officers' clear understanding that school tracks with the signs were open for use, I cannot conclude that the officer had a *reasonable* belief that Mr. Rand had committed a crime, necessary to support his arrest and the search and seizure of his gun. At best, the officer's disregard of the open-track policy could be considered a mistake of law attributable to his own sloppiness.

Of course, a reasonable mistake can still justify probable cause and permit the State to use evidence from a post-arrest search in a subsequent prosecution. The United States Supreme Court recently said as much in a Fourth Amendment case

involving a mistake of law made by a North Carolina police officer. Heien, 135 S. Ct. 530. In Heien, an officer pulled over the driver of a car and issued him a ticket for having one non-working brake light. Unbeknownst to the officer at the time, it did not violate North Carolina law to have just one non-functioning brake light. During the stop, occupants of the car acted suspiciously and the officer sought and received permission to search the car, which turned up cocaine. He proceeded to arrest Mr. Heien for attempted trafficking. Mr. Heien then argued that the drug evidence must be suppressed because the officer lacked a valid reason for stopping his car in the first place. The U.S. Supreme Court analyzed the mistake of law by focusing on whether the officer's initial mistake in stopping the car for a non-working brake light was a reasonable one. It considered an "objectively reasonable" mistake of law by an officer to justify a suspicion of illegal conduct and to avoid application of the exclusionary rule. Id. at 539-40. And, in that case, because the text of the North Carolina statute sent mixed messages about whether all vehicle brake lights must be functional, the Court found "little difficulty" finding reasonable suspicion in spite of the officer's mistake. Id. at 540. "[B]ecause the mistake of law was reasonable, there was reasonable suspicion justifying the stop." Id.

But Heien doesn't excuse the type of mistake that the officer made here. Whereas Heien involved an ambiguous code provision that wasn't clear on whether one non-working break light triggered a violation, the officer's "mistake" in this case

16

stemmed from his own inattentiveness to a posted policy that was patently familiar to his fellow officers. And so, the school district officer's mistake here wasn't objectively reasonable and does not support probable cause.

The State's primary justification of the officer's ignorance of the open-track policy, in support of finding probable cause, was the officer's own testimony that the school principal once told him that "she wants nobody on campus after hours and nobody should be on campus after hours." No school administrator confirmed such a policy, particularly as relates to the school's sign and open track. And the record shows that no one, not even the officer himself, enforced the policy that he attributed to the principal. Rather, the officer testified that he followed a district policy that, consistent with state law, didn't ban after-hours visitors, but allowed for invitees on campus who had a legitimate purpose for being there. The principal's supposed statement is also not very clear in what was meant by "nobody on campus after hours." I have to think that hardworking teachers and staff remain on campus after 4 p.m., or arrive before 7 a.m., on lots of days each school year. And students participating in athletics, clubs, and other school events, probably do too. It's inconceivable that the officer understood his duties as being to arrest anyone on campus after hours, and his testimony reflected as much.[2]

---

[2] The statement also doesn't describe what the principal meant by "campus," insofar as the school locked down the area around its buildings, but not access to its track (where it hung an inviting sign on an open track gate). These two areas were on

17

Furthermore, Mr. Rand's actions comported with the policy that the officer claimed to enforce. Mr. Rand entered the track area to walk in his exercise clothes, only upon being invited by the school's sign and open gate, and after other law enforcement officers had confirmed the open-track policy to him. He had both an invitation and legitimate purpose for being there, as the State conceded below: "the sign posted on the fence admittedly would give someone license to use the track during those hours."

The majority opinion makes a point of the fact that Mr. Rand may not have yet reached the track when the officer first spotted him, as though walking toward the track, but not on it, triggered probable cause to arrest him. Mr. Rand admitted that he had just entered the open gate to the track area when the officer passed by in his car. But it makes no difference whether the officer spotted him walking toward the track, or exercising on the track because, as the trial court put it, "How do you get to the track . . . if you don't walk across a piece of land to get there?" The sign by the open gate granted track "ACCESS." Mr. Rand didn't need to be airlifted in order to accept the school's invitation to use the track after school hours. Relatedly, Mr. Rand wasn't near any of the buildings on the other side of the "very large campus." Nor did the state offer any evidence that the school posted "no trespassing"

_____

opposite sides of "a very large campus" and "not at all" close to each other, according to the officer.

18

signs. The officer investigated none of this; he simply arrested Mr. Rand upon seeing him at the track.[3]

## II.

"The Fourth Amendment tolerates only reasonable mistakes." Heien, 135 S. Ct. at 539. And here, the officer lacked a reasonable belief that Mr. Rand was committing a crime. Because I do not consider the officer's inattentiveness to the school's open-track policy—disregarding the sign, the open gate, and his colleagues' correct understanding of the policy—as being objectively reasonable, I would affirm the trial court's decision to suppress the gun evidence. We should not give the state a Fourth Amendment advantage based on its officer's "sloppy study of the [school trespassing] laws he is duty-bound to enforce." Heien, 135 S. Ct. at 539-40.

\*          \*          \*

Finally, I realize respectfully that part of my problem with the majority opinion stems from its treatment of the facts. Although the State lost below, I read the majority opinion as casting the facts in a light supporting reversal, instead of in favor of the trial court's order. This is important because appeals courts are charged with making reasonable inferences and deductions from mixed evidence "in a

---

[3] Defense counsel: "You, upon making contact with [Mr. Rand], take him into custody for trespassing without incident, correct?"
Officer: "Yes, ma'am."
Defense counsel: "With no investigation, correct?"
Officer: "Correct."

manner most favorable to <u>sustaining</u> [a trial court's] ruling." <u>Van Teamer</u>, 108 So. 3d at 666 (quoting <u>State v. Gandy</u>, 766 So. 2d 1234, 1235–36 (Fla. 1st DCA 2000)) (emphasis added).

I struggle, for instance, with how the majority describes Mr. Rand's encounter with the officer; the supposed "No Trespassing" signs on campus fences; Mr. Rand's supposedly "inappropriate" clothing; the principal's statement to the officer; the officer's history of policing the campus; and Mr. Rand's location when the officer spotted him. One place where the record offers conflicting accounts, for instance, is in the description of Mr. Rand's mistaken arrest and the officer's rationale. The officer testified in one place that he "arrested [Mr. Rand] outright as soon as approaching him" because he was off the track, facing the school. In another place the officer testified that he'd have arrested Mr. Rand regardless of where he found him. In another place the officer said that he would "certainly not" have arrested Mr. Rand if he were walking on the track. And in another place the State claimed "[t]he State is not disputing the fact that Mr. Rand in actuality and in retrospect, he was walking on the track." The officer's testimony wasn't consistent and the trial court obviously couldn't reconcile all of it with Mr. Rand's simple story that he walked from his home to the track in exercise clothes, passed through the open gate, and turned left towards the track to begin his walk.

If the trial court had made the opposite ruling below, no doubt my inferences

20

and deductions from the evidence would have more closely aligned with the majority's view.